**UNITED STATES of America, Appellee,**

v.

**Michael KALTER, Appellant.**

**No. 93–1317.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 19, 1993.

Decided Sept. 29, 1993.

Joseph V. Neill, St. Louis, MO, for appellant.

Raymond M. Meyer, Asst. U.S. Atty., St. Louis, MO (argued), John J. Ware, Sp. Asst. U.S. Atty., St. Louis, MO (on the brief), for appellee.

Before BOWMAN, BEAM, and MORRIS S. ARNOLD, Circuit Judges.

MORRIS S. ARNOLD, Circuit Judge.

Michael Kalter appeals his conviction under 18 U.S.C. §§ 922(g)(1) and 924(e)(1), for being a felon in possession of a firearm. We affirm.

### I.

The record in this case amply supports the district court's finding of the facts that follow. St. Louis Police Officers John Winter and Simon Risk were on patrol on the night of December 5, 1991, when they saw a 1979 Chevrolet Blazer being driven without lights. The officers stopped the Blazer, and one approached from each side. As Officer Winter came next to the driver's side of the Blazer, he looked into the rear side window and saw, with the aid of a nearby street light and his own flashlight, a rifle on the rear seat. The officers ordered the driver and a passenger out of the Blazer, and the four stepped to the rear of the vehicle. The driver was subsequently identified as Michael Kalter. Officer Winter returned to the Blazer and took the rifle from the back seat. As Winter returned to the others carrying the

weapon, which was unloaded, Kalter volunteered, "That's my gun. I forgot it was in there." Winter then placed Kalter under arrest for "unlawful use of a weapon" and read him his *Miranda* rights. Kalter said he understood his rights and then asked the officers to give him a break, saying he used the gun only for protection. Kalter also told the officers that he'd been in trouble with the law before and that he did not want to go back to prison. Kalter was taken into custody and subsequently convicted of being a felon in possession of a firearm.

## II.

When the police officers stopped Kalter they had probable cause to do so because he was violating traffic laws by driving at night without lights. *See United States v. Cummins*, 920 F.2d 498, 500 (8th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). The officers arrested Kalter because they believed that he had violated a Missouri statute that forbids unlawful use of a weapon. *See* Mo.Rev.Stat. § 571.030.1(1). The relevant portion of that statute prohibits a person from "[c]arr[ying] concealed upon or about his person ... a firearm". *Id.* Kalter's gun was not, in fact, concealed and he was therefore not in violation of the Missouri statute as the officers thought. Also, when they arrested him the officers did not know Kalter was a convicted felon and therefore a felon in possession of a firearm. Kalter argues, accordingly, that the officers did not have probable cause to arrest him and consequently that the gun seized should not have been admitted into evidence.

■ We are unable to determine from the record why the officers thought that the Missouri statute had been violated. Even though the gun was visible to them when illuminated by the street light and flashlight, they may have considered that the gun was "concealed" because it was on the back seat of the Blazer rather than, for example, on a window rack. This is, however, inconsistent with their position that the gun was in plain view when they took it from the back seat prior to Kalter's arrest. Indeed, that the gun was in plain view justified its warrantless seizure after Kalter and his passenger

were ordered from the vehicle. *See Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Officers Risk and Winter apparently either misinterpreted the Missouri statute or misapprehended its substance. Perhaps they confused it with a similar St. Louis city ordinance that prohibits the transport of a firearm under certain circumstances. That ordinance provides that a person shall not carry a firearm "beyond the property limits of his residence or business premises in the city unless the firearm ... is unloaded and secured in a locked container or in a case, or is sealed in its original delivery carton." General Ordinances of the City of St. Louis, § 15.130.060. Kalter was acting in violation of this provision when he was stopped because the gun in his vehicle was not in a locked container or case, nor was it sealed in its original delivery carton.

■ How Officers Risk and Winter interpreted the law is not, in any event, dispositive of the question whether they had probable cause to arrest Kalter. We need not determine how these officers concluded that they had probable cause to arrest Kalter. We ask instead whether a prudent person, who knew about the St. Louis ordinance and who observed what these officers saw, could have believed that Kalter had committed or was committing a crime at the time of his arrest. *See, e.g., United States v. Slupe*, 692 F.2d 1183 (8th Cir.1982). It is obvious that a reasonable person could have believed Kalter had violated the St. Louis ordinance by transporting a gun, not enclosed in a case or its original packaging, in the back seat of his vehicle. The facts known to Officers Risk and Winter at the time of Kalter's arrest therefore constituted probable cause to arrest him. We therefore affirm the district court's decision not to suppress the gun recovered incident to the arrest.

## III.

■ Kalter next maintains that statements he made to officers during the traffic stop and after his arrest should have been suppressed. Kalter complains specifically about his admission that the gun was his, a statement made as Officer Winter removed it

from the vehicle. We note that the disclosure was voluntary and spontaneous, was made prior to Kalter's arrest, and was not made during interrogation. It was therefore properly admitted into evidence. *See United States v. Goudreau,* 854 F.2d 1097 (8th Cir. 1988). As for Kalter's statements that he had been in trouble before and didn't want to go back to prison, these followed his arrest, the reading of his *Miranda* rights, and his statement that he understood those rights. We see nothing here that undermines the district court's decision to admit these statements into evidence.

### IV.

Prior to trial, Kalter subpoenaed the personnel and internal affairs files of Officers Winter and Risk, along with copies of any and all police reports of persons arrested by these officers between January 1, 1990, and September 11, 1992, the date of the subpoena duces tecum. Kalter also sought the police tape recording of the officers' communications regarding the stop and arrest of Kalter. That final item was provided and is not at issue here. Kalter maintains that he needed the other items requested in order to establish a pattern of action by these officers that would support his contention that they had no probable cause to stop him and that the traffic stop was pretextual. The government moved to quash the subpoena, and the St. Louis Police Department objected to the request on the grounds that it would be very burdensome to satisfy and that Internal Affairs Department records are closed under Missouri law. *See Wilson v. McNeal,* 575 S.W.2d 802, 806–07 (Mo.App.1978). Stating that the records were of "little relevance", the district court granted the government's motion to quash the subpoena.

■ While Kalter presents this matter on appeal as one controlled by the so-called sunshine law of Missouri, Mo.Rev.Stat. § 610.010, *et al,* it is governed instead by the Federal Rules of Criminal Procedure. Rule 17(c) provides that a court may quash a subpoena duces tecum for the production of documents if "compliance would be unreasonable or oppressive." A subpoena duces tecum must be reasonable and specific, and the documents sought must be relevant. *See Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 n. 5, 71 S.Ct. 675, 678 n. 5, 95 L.Ed. 879 (1951); 2 Wright, *Federal Practice and Procedure: Criminal 2d* § 274 (1982). Here the district court, in its discretion, determined that the burden of producing the records sought greatly outweighed any relevance they might have to the case. We reverse the district court only for abuse of discretion. *See Bandy v. United States,* 296 F.2d 882, 892 (8th Cir.1961) (citation omitted). We find no such abuse here.

### V.

Kalter argues that he was denied his Sixth Amendment right to confront witnesses when the court denied his request to cross-examine Officer Winter about his interpretation of the Missouri statute that Winter thought Kalter had violated. Winter was allowed to testify that he arrested Kalter for "unlawful use of a weapon", a state law that the officer said Kalter violated by his possession of the firearm. When the defense attorney sought to question Officer Risk further regarding the statute, the district court disallowed it, presumably agreeing with the government's objection that the question improperly called for the officer's legal interpretation of the statute.

■ We hold that Officer Winter's interpretation of the statute was not relevant to any matter that the jury was charged with deciding. The testimony would be relevant, if at all, only in a hearing on a motion to suppress the evidence seized incident to the arrest. District courts retain broad discretion to limit cross-examination beyond that necessary to satisfy the Sixth Amendment. *See United States v. Crump,* 934 F.2d 947 (8th Cir.1991). A district court's decision to limit cross-examination is reversed only on showings of clear abuse of discretion and of prejudice to the defendant. *Id.* at 953 (citing *United States v. Lee,* 743 F.2d 1240, 1249 (8th Cir.1984)). Kalter has shown neither here.

### VI.

■ Kalter asserts that he was prejudiced when Officer Risk testified that, at the time

of the stop, the police knew Kalter to be violent and that they had previously detained or arrested him. Officer Risk made the statement during his cross-examination by Kalter's attorney. The exchange went as follows:

> Q. Well, did you run an arrest record on [Kalter] at the scene at all?
>
> A. Yes, we run a record check on individuals at the scene. The dispatcher will advise us if there's a "wanted", if there's any [current] "wanted" and she will advise if there is any type of caution indicator on him. But they won't tell us over the radio what he has been arrested for.
>
> Q. He wasn't wanted for anything at [the time of the stop]?
>
> A. No, Sir.
>
> Q. Would they advise you as to whether or not he has any criminal record?
>
> A. All they'll tell us is the caution indicators on them. If they have a caution indicator, that indicates several things. I believe on Mr. Kalter, the caution indicator was a number two.
>
> Q. Does that indicate he's been convicted of anything?
>
> A. It indicates he's known to be violent with the police and that he has been detained or arrested by the police but it doesn't say what for. They won't tell you that.

Kalter's attorney did not object to Risk's testimony nor did he move to strike any portion of it. Indeed, his questioning elicited the very statements to which Kalter now objects. Only when the prosecuting attorney raised the issue on redirect examination of Officer Risk did Kalter's attorney object. The objection was overruled, and Risk essentially reiterated his prior testimony on the matter. On recross-examination of Officer Risk, Kalter's attorney clarified that caution indicator two meant that the subject either had assaulted a police officer or that he had merely had contact with them. The officer clearly explained to the jury that Kalter's caution indicator number two did not necessarily mean that Kalter had assaulted an officer.

Kalter's attorney initially explored the matter that he now finds objectionable, and he did not object or move to strike when the statement was made. Furthermore, Kalter's attorney raised the issue again in recross-examination of the officer and was able to clarify any mistaken impression the jury might otherwise have had regarding the meaning of the caution indicator information. Under these circumstances we are unwilling to say that Kalter was prejudiced by the relevant testimony.

## VII.

Kalter's remaining arguments are entirely without merit. We therefore affirm the district court.