Shibley v. Begin                    CV-096-267-SD 03/26/98

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Mark P. Shibley

    v.                                    Civil No. 96-267-SD

J.P. Begin, et al.

**O R D E R**

In this civil rights action brought pursuant to 42 U.S.C. §
1983 plaintiff Mark Shibley requests damages from the defendants,
Officer J.P. Begin and the City of Manchester.  Shibley's
complaint relates to an incident that began with emergency
personnel responding to a 911 call reporting a suspected overdose
by Shibley's roommate, and ended with Shibley being sprayed with
pepper spray and arrested for disorderly conduct.  Shibley's
original complaint included claims for constitutional violations
under § 1983 and a compendium of tort claims against three police
officers, ambulance personnel, and the City of Manchester.
Shibley has voluntarily dismissed some of the defendants and some
of the complaints.  The remaining claims are § 1983 claims
against Officer Begin alleging unreasonable search and seizure
and the use of excessive force in violation of the Fourth and
Fourteenth Amendments, and tort claims against Officer Begin and
the city of Manchester for wrongful arrest, malicious
prosecution, intentional infliction of emotional distress,

wrongful detention, assault, and battery. Well after the deadline for dispositive motions, defendants filed a motion for summary judgment. Because defendants' motion raised the issue of qualified immunity, which should be resolved before trial whenever possible, the court allowed the motion to be filed over plaintiff's objection. Presently before the court is Defendants' Motion for Summary Judgment to which Shibley objects.

## Background

On June 6, 1993, Marina Oliszczak, who was living with Shibley at the time, called a drug counseling center. During her conversation with the counselor, Ms. Oliszczak sounded despondent and indicated that she had taken valium in excess of the prescribed dose. Believing she was suicidal, the counselor put Ms. Oliszczak on hold and called 911.

The Manchester Fire Department was first to respond to the call. According to Shibley, Ms. Oliszczak went down the stairs from their second story apartment and met the fire fighters in the lobby of the building. After Ms. Oliszczak told the fire fighters that she did not need assistance, they left. As they were leaving, two paramedics and Officer Begin arrived. Shibley met them at the first floor doorway that lead to his apartment. According to Shibley, when Officer Begin attempted to enter the

2

apartment Shibley asked him if he could enter without a warrant. Officer Begin tried to push the door open, but Shibley attempted to push it shut from the other side. Officer Begin then asked Shibley if he was refusing entry, and Shibley again asked whether he needed a search warrant. According to Shibley, Officer Begin did not respond verbally, but without warning twice sprayed him in the face with pepper spray.

After being sprayed, Shibley climbed the stairs to his apartment and began to rinse his face in the kitchen sink. Officer Begin and the paramedics entered behind him. Officer Begin handcuffed Shibley from behind while he was rinsing his face and pushed his head into the sink. Officer Begin then escorted Shibley outside and allegedly slammed Shibley against the trunk of the police car. Although she maintained that she did not take an overdose, the paramedics took Ms. Oliszscak to Eliot Hospital on the advise of the drug counselor who believed Oliszscak was a danger to herself.

Shibley was charged with disorderly conduct, but the Manchester District Court dismissed the case.

## Discussion

### 1. Standard for Summary Judgment

"Summary judgment exists to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Nereida-Gonzalez v. Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993)). The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To resolve a motion for summary judgment, the court must scrutinize the entire record in the light most favorable to the non-movant, with all reasonable inferences resolved in that party's favor. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995). "In general, . . . a party seeking summary judgment [must] make a preliminary showing that no issue of material fact exists. Once the movant has made this showing, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Town of Dedham, 43 F.3d

4

731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, 515 U.S. 1103 (1995). "This framework remains intact when qualified immunity issues are presented despite the potential of such defenses, in other ways, to 'create strange procedural configurations.'" Nereida-Gonzalez, supra, 990 F.2d at 703 (quoting Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990)).

2. Qualified Immunity

Although § 1983 on its face provides for no defenses or immunities, the United States Supreme Court has held that government officials, including law enforcement officers, who perform discretionary functions are entitled to qualified immunity from suit in civil rights actions under § 1983. See Hegarty v. Somerset County, 53 F.3d 1367, 1372 (1st Cir.) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)), cert. denied, 116 S. Ct. 675 (1995). Qualified immunity represents "an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Harlow, supra, 457 U.S. at 807 (quoting Butz v. Economou, 438 U.S. 478, 506 (1978)).

5

Before <u>Harlow v. Fitzgerald</u>, the qualified immunity test involved both an objective and a subjective component. <u>See</u> 2 SHELDON NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 8:1 (4th ed. 1997). In <u>Harlow</u>, however, the Court declared that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, <u>supra</u>, 457 U.S. at 817-18.

Thus the first step in the qualified immunity test is for the court to determine whether the right violated was clearly established. Although most rights when cast in sufficiently general terms can be declared clearly established, the Supreme Court has stated clearly that the qualified immunity question must be addressed on a more fact-specific level. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639-40 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been

6

held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. at 640 (citations omitted). After determining the contours of the right, the court must determine whether a reasonable officer should have understood that his or her conduct violated that right.

The issue of qualified immunity is a question of law to be decided by the court at the earliest possible stage of the litigation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991); Hegarty, supra, 53 F.3d at 1373-74. However, "[i]f . . . the trial court on summary judgment motion finds that there are genuine issues of material fact in dispute and that these issues preclude a decision on the qualified immunity question, then it denies summary judgment at that time. Thereafter, when the parties have submitted all of their evidence at trial, the defendant can move for directed verdict on qualified immunity grounds." 2 Nahmod, supra, § 8:22. If there are still disputed issue of fact, the court may submit the fact questions to the jury, reserving the issue of qualified immunity for the court.

The court, however, "may . . . bypass the qualified immunity analysis if it would be futile because current law forecloses the claim on the merits." Aversa v. United States, 99 F.3d 1200, 1215 (1st Cir. 1996). In this case, as discussed below, the court need not reach the qualified immunity defense to

7

plaintiff's counts I and II because these claims are foreclosed on the merits.

### a. Count I

Shibley's Count I alleges that Officer Begin's entry into his apartment was an illegal search in violation of the Fourth Amendment.[1] See U.S. Const. amend. IV. It is well established that "[t]he Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.'" Mincey v. Arizona, 437 U.S. 385, 390 (1977) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception allows officers to enter a residence in exigent circumstances such as "an imminent threat to the life or safety of members of the public, the police officers, or a person located within the residence." McCabe v. Life-Line Ambulance Service, 77 F.3d 540, 545 (1st Cir.), cert. denied, 117

---

[1]The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

S. Ct. 275 (1996); see also Mincey, supra, 437 U.S. at 392 ("Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.").

Generally, the test to determine whether exigent circumstances justify a warrantless entry looks at "'whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.'" United States v. Wihbey, 75 F.3d 761, 766 (1st Cir. 1996) (quoting United States v. Wilson, 36 F.3d 205, 209 (1st Cir. 1994)). The determination of exigent circumstances turns "upon the objective reasonableness of ad hoc fact specific assessments." McCabe, supra, 77 F.3d at 545. The court must keep in mind that "[t]hese cases do not arise in the calm which pervades a courtroom or library." Wayne v. United States, 318 F.2d 205, 211 (D.C. Cir.), cert. denied, 375 U.S. 860 (1963). "As Chief Justice (then Judge) Burger stated in his oft-quoted opinion in Wayne v. United States:

> '[A] warrant is not required to break down a door to
> enter a burning home to rescue occupants or extinguish
> a fire, to prevent a shooting or to bring emergency aid
> to an injured person. The need to protect or preserve
> life or avoid serious injury is justification for what
> would be otherwise illegal absent an exigency or
> emergency. . . . [T]he business of policemen and
> firemen is to act, not to speculate or meditate on
> whether the report is correct. People could well die

9

in emergencies if police tried to act with the calm deliberation associated with the judicial process.'

3 WAYNE LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.6(a), at 391 (3d ed. 1996) (quoting Wayne, supra, 318 F.2d at 212).

The plaintiff asserts that to justify Begin's entry under exigent circumstances, the defendant "must establish that there was no other way to address this emergency short of the warrantless entry." Memorandum of Law in Support of Plaintiffs [sic] Objection to Motion for Summary Judgment at 5. The court, however, is not persuaded that this is an accurate statement of the law. Nowhere in the case law on the emergency exception to the warrant requirement has the Supreme Court or the First Circuit declared that there must have been no other alternative. Indeed, in the very case cited by the plaintiff in support of this proposition, the court found the officers' warrantless entry reasonable despite the plaintiff's evidence of alternatives. See Hegarty, supra, 53 F.3d at 1377 ("[W]e do not determine which of these strategies represented the more prudent course or posed the least serious risk to the suspect. . . . Rather, we consider only whether a competent police officer in these circumstances reasonably could have opted for an unannounced approach. . . ."). Requiring officers to determine that there were no other means of handling an emergency would be overly burdensome. The law does

not require police officers to identify and assay every possible course of action before responding to an emergency. "People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." Wayne, supra, 318 F.2d at 212. Of course, the existence of alternative means for handling a situation may aid evaluation of the reasonableness of the entry. As long as the officer's actions were reasonable, however, the court will not invalidate a search because it was not the best or only alternative.

In this case, the court must grant summary judgment if Begin reasonably could have concluded, based on the facts known to him at the time, that "a person within [was] in need of immediate aid." Mincey, supra, 437 U.S. at 392. An emergency call to 911 certainly supports a reasonable belief that an emergency exists.[2] See Wilson v. San Francisco, No. C-95-2165MMC, 1996 WL 134919, at *2 (N.D. Cal. March 18, 1996) (holding that as a matter of policy, responding officers must not be deterred from treating 911 calls as emergencies); United States v. Warden, 886 F. Supp.

---

[2]The court suspects plaintiff's argument that Officer Begin was obliged to investigate the source of the 911 call and seek independent verification before responding to be disingenuous. See Michigan v. Tyler, 436 U.S. 499, 509 (1978) ("[I]t would defy reason to suppose that firemen must secure a warrant . . . before entering a burning structure to put out the blaze."). When an emergency call reports a threat to someone's safety, it would be absurd to suggest emergency personnel should begin investigating the source of the call rather than responding to the emergency.

813, 817 (D. Kan. 1995). Based on the dispatch he received, Begin had reason to believe someone's life was in imminent danger. The question here, however, is whether subsequent information undermined the reasonableness of this belief. The parties' versions of what occurred once the emergency personnel arrived at the plaintiff's apartment diverge somewhat. Both sides, however, agree that the fire department was the first to arrive on the scene, and that the fire fighters were leaving as Officer Begin and the paramedics arrived. Even assuming the firefighters had spoken with Ms. Oliszczak, she had assured them she did not need assistance, and Officer Begin was aware of this, he still could have believed that a potentially suicidal individual's assurances were not particularly trust-worthy. In an analogous situation, the United States Court of Appeals for the Second Circuit held that a police officer responding to a 911 call reporting a domestic dispute was reasonable in entering the house and searching for victims or perpetrators despite the fact that one of the putative victims told the officer that no one needed assistance and asked him to leave. See id. at 198; see also United States v. Brown, 64 F.3d 1083, 1086 (7th Cir. 1995) ("We do not think that the police must stand outside an apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams."). Thus, mindful of

12

"'the need for a prompt assessment of sometimes ambiguous information concerning potentially serious con-sequences,'" the court finds that Begin could have reasonably believed someone inside the apartment was in need of immediate assistance. Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998) (quoting 3 LaFave, supra, § 6.6(a), at 391).

Furthermore, Officer Begin did not conduct a broad reaching search of the apartment. When a search is warranted by exigent circumstances, it must be strictly circumscribed. See Mincey, supra, 437 U.S. at 393. Thus, courts have disapproved searches purportedly made pursuant to the emergency exception when the search overreaches what is necessary. See 3 WAYNE LaFave, supra, § 6.6(a), at 401. In this case, the fact that Officer Begin did not conduct an extensive search of the apartment supports the conclusion that the warrantless search was reasonable.

### b. Count II

Once an officer has lawfully entered a home, he or she may effect an otherwise lawful arrest. See Sheik-Abdi v. McClellan, 37 F.3d 1240, 1245 (7th Cir. 1994). Count II of Shibley's complaint, however, alleges that his arrest violated the Fourth Amendment, which requires probable cause before an officer may make a warrantless arrest. See Logue v. Dore, 103 F.3d 1040,

13

1044 (1st Cir. 1997). "[P]robable cause to make an arrest exists if-and only if-the facts and circumstances of which the arresting officer has knowledge are sufficient to lead an ordinarily prudent officer to conclude that an offense has been, is being, or is about to be committed, and that the putative arrestee is involved in the crime's commission." Logue, supra, 103 F.3d at 1044. According to Shibley, his arrest was illegal because no reasonable officer could have believed probable cause existed to arrest him for disorderly conduct, an offense that only applies to conduct performed in a public place. See New Hampshire Rev. Stat. Ann. § ("RSA") 644:2. The defendants, however, argue that Officer Begin arrested Shibley intending to charge him with obstructing government administration. See RSA 642:1. Thus, before considering probable cause, the court must determine for which offense probable cause was required. The question, therefore, is whether the Fourth Amendment requires the court to decipher the officer's intent when he made the arrest to determine for which offense Shibley was really arrested, or whether probable cause to arrest for any offense will make the arrest legal.[3]

---

[3]New Hampshire law provides that "[i]f a lawful cause of arrest exists, the arrest will be lawful even though the officer charges the wrong offense or gave a reason that did not justify the arrest." RSA 594:13. Thus, this question requires the court indirectly to examine the constitutionality of this provision.

14

In general, the United States Supreme Court has emphasized the objective nature of the Fourth Amendment inquiry.  In Terry v. Ohio, the Supreme Court held that a test based on good faith could not provide adequate protection from unreasonable searches and seizures.  See 392 U.S. 1, 22 (1968).  In assessing reasonableness, the Court declared, "it is imperative that the facts be judged against an objective standard . . . ."  Id. at 21.  While, Terry, stands for the proposition that good faith cannot immunize objectively unreasonable conduct, it did not address the repercussions of bad intent.  In Scott v. United States, however, the Court considered whether a lack of good faith could invalidate otherwise reasonable conduct.  See 436 U.S. 128, 136-37 (1978).  The Scott Court concluded that "subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional."  Id. at 136.  Scott, however, did not completely preclude application of a subjective component to the Fourth Amendment analysis.  The Court explained that "in evaluating alleged violation of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions . . . ."  Id. at 137 (emphasis added).  Thus, Scott did not foreclose the possibility that in some cases, after applying an objective test, courts might properly impose a further subjective analysis.

15

In subsequent Fourth Amendment cases, however, the Supreme Court seemed to eschew subjective inquiries, emphasizing the importance of employing an objective standard. For instance, in Maryland v. Macon, the Court considered a claim that an unreasonable seizure took place when an officer, without a warrant, purchased some magazines with a marked bill he later confiscated. See 472 U.S. 463, 465-66 (1985). The Court rejected the contention that the officer's intent to retrieve the money transformed the sale into a seizure, stating "whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's action in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." Macon, supra, 472 U.S. at 470-71 (quoting Scott, supra, 436 U.S. at 136). Similarly, when examining a claim of excessive force under the Fourth Amendment, the Court stated, "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham v. Connor, 490 U.S. 386, 397 (1989). The Court's use of a strictly objective standard is based both on the evidentiary problems associated with proving state of mind and fairness concerns. See Massachusetts v.

16

Painten, 389 U.S. 560, 565 (1968) (White, J. dissenting from dismissal of cert. as improvidently granted) ("sending state and federal courts on an expedition into the minds of police officers would produce grave and fruitless misallocation of judicial resources."); Horton v. California, 496 U.S. 128, 138 (1990) ("Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.").

The Court directly considered the role of intent in the case of warrantless seizures in Whren v. United States, 116 S. Ct. 1769 (1996). In Whren, the Court considered whether a stop for a traffic violation could violate the Constitution if the purported purpose of the stop was really a pretext. See Id. at 1773. Before Whren, the circuits had been split over whether courts should apply the "would test" or the "could test" to such cases. The petitioner in Whren advocated the "would test," arguing "the Fourth Amendment test for traffic stops should be, not the normal one . . . of whether probable cause existed to justify the stop; but rather, whether a police officer, acting reasonably, would have made the stop for the reason given." Id. The Court, however, rejected this argument adopting instead the "could test." Thus, the Court held that the stop was proper provided a reasonable officer could have deduced probable cause. In

17

rejecting Whren's argument, the Court emphasized the importance of a strictly objective test.  See id. at 1775.  According to the Court, "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  Id. at 1774.  The Court also rejected the petitioner's attempt to frame the "would test" as an objective test.  Unlike the objective test favored by the Court, this test could create inconsistent results.  Thus, the Court emphasized, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."  Id. at 1775 (emphasis in original).

Despite this emphasis on a completely objective standard, the Supreme Court's Fourth Amendment jurisprudence is not without references to subjective considerations, especially in cases allowing searches with less than probable cause.  For instance, although the Court has allowed officers routinely to search belongings in police possession to inventory them, cases upholding such searches have suggested that the absence of pretext is a relevant consideration.  See e.g., Florida v. Wells, 495 U.S. 1, 4 (1990) ("an inventory search must not be used as a ruse for a general rummaging in order to discover incriminating evidence"); Colorado v. Bertine, 479 U.S. 367, 372 (1987) ("In the present case, . . . there was no showing that the police

18

. . . acted in bad faith or for the sole purpose of investigation."); <u>South Dakota v. Opperman</u>, 428 U.S. 364, 376 (1976) ("there is no suggestion whatever that this standard procedure . . . was a pretext concealing an investigatory police motive"). Similarly, when evaluating an administrative search, the Court considered whether the search appeared to be "a 'pretext for obtaining evidence of . . . violation of . . . penal laws." <u>New York v. Burger</u>, 482 U.S. 691, 716-17 n.27 (1987); <u>see</u> <u>also</u> <u>Abel v. United States</u>, 362 U.S. 217 (1960) ("The deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts."). Thus, in these cases, the Court has required officers conducting searches on less than probable cause to adhere in good faith to standard operating procedures. The <u>Whren</u> Court, however, dismissed these cases as inapposite to cases involving searches based upon probable cause. <u>See</u> <u>Whren</u>, <u>supra</u>, 116 S. Ct. at 1773.

Although the Supreme Court has now squarely addressed the issue of pretext in Fourth Amendment seizures, it has not dealt with the issue presented in this case. Other courts, however, have held that as long as probable cause exists for any offense based upon the facts known to the officer at the time, an arrest is reasonable. <u>See e.g.</u>, <u>United States v. Cervantes</u>, 19 F.3d

19

1151, 1153 (7th Cir. 1994), cert. denied, 513 U.S. 1086 (1995); United State v. Kalter, 5 F.3d 1166, 1168 (8th Cir. 1993); United States v. Hawkins, 811 F.2d 210, 215 (3d Cir.), cert. denied, 484 U.S. 833 (1987). For instance in Kalter, the officers stopped Kalter for a traffic violation. See 5 F.3d at 1167. Upon approaching the vehicle, they observed a rifle on the rear seat. Id. The officers then arrested Kalter for "'unlawful use of a weapon.'" Id. at 1168. Because, unbeknownst to the officers, Kalter was a felon, he was later convicted of being a felon in possession of a firearm. Id. Kalter, however, argued that the officers did not have probable cause to arrest him because the statute they arrested him for violating prohibited an individual from "'[c]arr[ying] concealed upon or about his person . . . a firearm." Id. Although the court found that Kalter's weapon was not in fact concealed and it did "not determine how these officers concluded that they had probable cause to arrest Kalter," it nonetheless held that there was probable cause to arrest on the basis of a city ordinance that provided "a person shall not carry a firearm 'beyond the property limits of his residence or business premises in the city unless the firearm . . . is unloaded and secured in a locked container or in a case, or is sealed in its original delivery carton.'" Id. The court stated that the proper inquiry was "whether a prudent person

20

. . . who observed what these officers saw, could have believed that Kalter had committed or was committing a crime at the time of his arrest." Id. The court held that because "it is obvious that a reasonable person could have believed Kalter had violated the . . . ordinance," the officers had probable cause to arrest him. Id.

In an opinion that predated Whren the United States Court of Appeals for the First Circuit decided a case in which the officers arrested the suspect for an offense for which probable cause was absent although there was probable cause to arrest the suspect for a different offense. See Santiago v. Fenton, 891 F.2d 373, 386-87 (1st Cir. 1989). The Santiago court held that the officers could not "be granted qualified immunity based on action that they could have, but did not take." Id. at 387. Santiago, however, is distinguishable from this case. In Santiago, the offense for which the officers arrested the plaintiff and the offense for which they argued there was probable cause were based upon different underlying acts. See id. Thus, the court was able to classify the arrest for one offense and an arrest for the other offense as different acts. In this case there was only one underlying act. The question, thus, is whether attaching the wrong label to Shibley's conduct can invalidate the arrest.

This court believes that the approach adopted in cases such as Kalter is proper given the Supreme Court's holding in Whren. "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." Whren, supra, 116 S. Ct. at 1775. Furthermore, considering for which offense Officer Begin "really" arrested Shibley would require a determination of the officer's subjective intent, which would engender the evidentiary difficulties obviated by a purely objective standard. Such a test could also create inconsistent results. Thus, the arrest was legal if there was any offense for which an officer could have reasonably believed there was probable cause.

Shibley argues that Officer Begin did not have probable cause to arrest him for disorderly conduct because Shibley's conduct was not performed in a public place. The statutory definition of "public place" includes "the lobbies or hallways of apartment buildings . . . ." RSA 644:2. However, the court need not decided whether Officer Begin could have reasonably, albeit mistakenly, concluded that Shibley was in a public place when he was standing in the doorway to his apartment because the court concludes that there was probable cause to arrest Shibley for obstructing government administration.

"A person is guilty of a misdemeanor if he uses force,

22

violence, intimidation or engages in any other unlawful act with a purpose to interfere with a public servant . . . performing or purporting to perform an official function. . . ."  RSA 642:1. In this case, the uncontested facts support a reasonable belief that Shibley violated this statute.  According to Shibley's own account of events, when Officer Begin attempted to enter the apartment Shibley resisted the officer's efforts to open the door by attempting to push the door shut.  Thus, Shibley applied force in an attempt to prevent Officer Begin from achieving his objective.  It is of no legal moment that Shibley believed Officer Begin was not legally entitled to enter the apartment. The statute clearly applies to officials merely "purporting to perform an official function."  Id.  Like New Hampshire's law against resisting arrest, which applies "regardless of whether there is a legal basis for the arrest," RSA 642:2, this provision reflects the legislature's judgment that citizens should not employ self help when they feel they are wronged by government officials.  See State v. Haas, 134 N.H. 480, 484-85, 596 A.2d 127, 130 (1991).  Thus, citizens are forbidden from interfering even with officials acting illegally because the legislature has decided it preferable "to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather

23

than by physical confrontation on the street or in the gutter." Id. at 484.

   c. Count III

Count III alleges that Begin violated Shibley's constitutional rights by spraying him with the pepper spray, pushing his head into the sink as he was placing the handcuffs on him, and slamming him against the police car. As an initial matter, the court notes that although both parties address the use of force as a violation of the Fourth Amendment's prohibition of unreasonable seizures, it is not clear that this is the appropriate standard for analyzing Officer Begin's use of pepper spray. The Fourth Amendment plainly governs Shibley's claims that Officer Begin pushed his face into the sink and threw him against the police cruiser since this standard clearly applies to claims of excessive force that arise in the context of an arrest. See Graham, supra, 490 U.S. at 394. The Supreme Court, however, has "reject[ed] the notion that all excessive force claims brought under § 1983 are governed by a single generic standard." Id. at 393. While the reasonableness standard of the Fourth Amendment applies to force in the course of an arrest, stop, or other seizure of the person, the Eighth Amendment applies to prisoners' claims of excessive force, and the Due Process Clause

24

of the Fourteenth Amendment prohibits the use of excessive force against pre-trial detainees. In Landon-Rivera v. Cruz Cosme, for instance, the First Circuit held that a hostage who had been shot accidently by a police officer could not bring a claim under the Fourth Amendment because he had not been seized. See Landon-Rivera v. Cruz Cosme, 906 F.2d 791, 795-96 (1st Cir. 1990). Rather, the court analyzed Landol's claim under the Due Process Clause of the Fourteenth Amendment. Id. Thus, to determine whether the Fourth Amendment standard is applicable the court must ascertain whether the force was used in the context of some type of seizure of the person.

There are two broad categories of actions that amount to seizures of the person under the Fourth Amendment. First, a person is seized when he or she submits to a show of authority that would lead a reasonable person to believe he or she was not free to leave. See California v. Hodari D., 499 U.S. 621, 628-29 (1991). Second, a seizure may be effected through the use of force when the authorities intentionally apply force for the purpose of restraining the individual's freedom of movement. See Brower v. Inyo County, 489 U.S. 593, 596 (1989); Landol-Rivera, supra, 906 F.2d at 795. If Officer Begin's use of pepper spray is to be analyzed under the Fourth Amendment at all it would have to be because it constituted the second type of seizure.

25

"[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement. . . ." Brower, supra, 489 U.S. at 596-97. The Fourth Amendment is only implicated when force is intentionally applied. See id.; Landol-Rivera, supra, 906 F.2d at 795. Thus, in Landol-Rivera the First Circuit held that when a police officer accidently shot a hostage, the hostage was not seized within the meaning of the Fourth Amendment. See supra, 906 F.2d at 796. Furthermore, the force must be used in an attempt to terminate the individual's freedom of movement. Thus, in Brower, the Supreme Court concluded that a seizure occurred because "Brower was meant to be stopped by the physical obstacle of the roadblock-and . . . he was so stopped." Supra, 489 U.S. at 599. Although the precedent could be read to mean that a seizure takes place whenever force is intentionally applied, this court feels that that conclusion is not in accord with the applicable Supreme Court precedents. The Supreme Court's discussion of seizure of the person through the use of force in both Hodari D. and Brower started from the proposition that the force was used for the purpose of arresting or stopping the subject. "'An officer effects an arrest of a person . . . by laying his hand on him for the purpose of arresting him . . . .'" Hodari D., supra, 499 U.S. at 624 (quoting Whitehead v. Keyes, 85 Mass. 495, 501 (1862)).

26

Furthermore, if the intentional application of force in and of itself amounted to a Fourth Amendment seizure, the Court's announcement that prisoners' excessive force claims are governed by the Eight Amendment, rather than the Fourth, would be undermined. If all intentional uses of force were seizures, they would all be governed by the Fourth Amendment.

In this case, it is clear that Begin's use of the pepper spray amounted to intentionally applied force. The question, however, is whether Officer Begin's use of force was in the context of the arrest. From the record currently before the court it appears that Begin may have used the pepper spray to gain immediate access to the second floor apartment. Thus, whether Begin used the pepper spray in an attempt to arrest Shibley or for some other purpose is a question of fact. Normally such questions of fact, especially when they involve issues of intent, are issues for the jury. See Broderick v. Roache, 996 F.2d 1294, 1299 (1st Cir. 1993). Because, however, the defendants have raised the defense of qualified immunity, this claim only need reach a jury if Officer Begin is not entitled to qualified immunity under one or both of the potentially applicable standards.

Under the Fourth Amendment standard, the court inquires whether the officer's use of force was objectively reasonable in

27

light of the facts confronting him or her at the time, without reference to his or her underlying intention or motivation.  <u>See</u> <u>Dean v. City of Worcester</u>, 924 F.2d 364, 367 (1st Cir. 1991). The amount of force that is reasonable to make an arrest depends on factors such as "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" <u>Id.</u> at 368 (quoting <u>Graham</u>, <u>supra</u>, 490 U.S. at 396).  Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," <u>Graham</u>, <u>supra</u>, 490 U.S. at 396, defendants' suggestion that the absence of physical injuries precludes a claim of excessive force is incorrect.  <u>See</u> Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 7-8; <u>Alexis v.</u> <u>McDonald's Restaurants of Mass.</u>, 67 F.3d 341, 353 n.11 (1st Cir. 1995) ("trialworthy 'excessive force' claim is not precluded merely because only minor injuries were inflicted").

In this case, Shibley was arrested for a misdemeanor.  There is no evidence that Shibley posed a threat to anyone's safety as he was washing his face when Officer Begin allegedly pushed his face into the sink, and was already in handcuffs when Officer Begin allegedly pushed him against the car.  Furthermore, there

28

is no indication that Shibley was actively attempting to resist arrest or escape. Given these circumstances, a reasonable officer would have to conclude that in this situation more than a modicum of force would violate the Fourth Amendment.

Under the Fourteenth Amendment, in contrast to the Fourth Amendment focus on objective reasonableness, "government officials may be held liable . . . only if their conduct 'reflect[ed] a reckless or callous indifference to an individual's rights.'" Landol-Rivera, supra, 906 F.2d at 796 (quoting Gutierrez-Rodriquez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989) (quoting Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989))). To determine whether a use of force violates the Due Process Clause of the Fourteenth Amendment courts consider "'the need for force and the amount of force used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Jones v. City of Dothan, 121 F.3d 1456, 1461 (11th Cir. 1997) (quoting Wilson v. Northcutt, 987 F.2d 719, 722 (11th Cir. 1993)). Based upon Shibley's version of the facts, it appears that Officer Begin's use of force may have violated this standard. First, according to Shibley, Begin sprayed him with pepper spray without warning after Shibley responded to his request to enter the apartment by

29

asking him whether he needed a warrant.[4]  Based on this brief encounter in which Officer Begin allegedly made no attempt verbally to persuade Shibley to open the door and did not explain why he needed to gain access to the apartment, there does not reasonably appear to be any need for force, and thus the force used appears grossly disproportionate.  Furthermore, if the jury believes Shibley's version of events and concludes that force was unnecessary, it could also reasonably conclude that Officer Begin lacked good faith and that his use of force was malicious.[5]

Thus, because there are disputed issues of material fact, which call into question whether Officer Begin is entitled to qualified immunity, the defendants' request for summary judgment on Shibley's excessive force claim must be denied.  Of course, after the factual issues are settled by trial, the court may again examine the issue of qualified immunity.

_____

[4]Officer Begin's version of the encounter differs considerably from Shibley's account.

[5]The court notes that the issue of how to apply the objective qualified immunity test to alleged constitutional violations with subjective components is unsettled.  Although some circuits have applied a modified qualified immunity test to make it easier for officials to receive qualified immunity when the unconstitutionality of their conduct depends on motive, the First Circuit has not adopted such an approach.  See Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 46 (1st Cir. 1988).  The Supreme Court recently heard a case that will resolve this issue.  See Crawford-el v. Britton, 93 F.3d 813 (D.C. Cir. 1996), cert. granted, 117 S. Ct. 2451 (1997).

3. State Law Claims

    a. Wrongful Arrest and Wrongful Detention

    The defendants move for summary judgment on Shibley's common law claim of wrongful arrest based on the assertion that Officer Begin's conduct was lawful, and therefore justified. New Hampshire's criminal code provides that "any conduct . . . is justifiable when it is authorized by law," RSA 627:2, and another section of the code provides that conduct that is justified under the criminal code cannot serve as the basis for civil liability. See RSA 507:8-d. An arrest is lawful provided that any "lawful cause of arrest exists." RSA 594:13. As discussed above, there was probable cause to arrest Shibley for obstruction of government administration. Thus, the court must grant summary judgment on Shibley's wrongful arrest claim. Furthermore, since the arrest was made pursuant to law, Shibley's detention was also lawful.


    b. Malicious Prosecution

    The defendants argue that the defendants enjoy absolute immunity from Shibley's malicious prosecution claim. The absolute immunity that protects prosecutors traces its roots to judicial immunity, which is absolute. Prosecutors, however, do not receive absolute immunity solely based on their title. See

31

Kalina v. Fletcher, 118 S. Ct. 502, 510 (1997). The test for absolute immunity is functional, focusing on the act and not the actor. See Belcher v. Paine, 136 N.H. 137, 144, 612 A.2d 1318, 1323 (1992). Both the United States Supreme Court and the Supreme Court of New Hampshire have relied on this functional test, which focuses on the nexus between the conduct complained of and the judicial phase of the prosecution. Thus, police officers have been granted absolute immunity when serving as a witness at trial, and prosecutors have been held to be immune from suits arising from their initiation of judicial proceedings and presentation the state's case. See Kalina, supra, 118 S. Ct. at 508; Briscoe v. LaHue, 460 U.S. 325, 345-46 (1983). On the other hand, police officers are not absolutely immune from suits alleging the officer illegally procured a warrant. See Malley v. Briggs, 475 U.S. 335, 343 (1986). Similarly, prosecutors are not immune from suits arising from investigatory conduct.

In this case, the plaintiff's claim seems to be based upon Officer Begin's decision to charge Shibley with disorderly conduct. This act bears a closer relationship to the judicial process than does the decision to get a warrant. Since a prosecutor is absolutely immune from suits based on his or her "initiation of the criminal process," the court is persuaded that Officer Begin should be similarly immune. Belcher, supra, 136

N.H. at 146, 612 A.2d at 1327; see also Albright v. Oliver, 510 U.S. 266, 279 n.5 (Ginsburg, J. concurring) ("focusing on the police officer's role in initiating and pursuing a criminal prosecution . . . raises serious questions about whether the police officer would be entitled to share the prosecutor's absolute immunity.").

c. Intentional Infliction of Emotional Distress

The defendants ask for summary judgment on the plaintiff's claims of intentional emotional distress. First, defendants argue the justification defense provided by RSA 627:2 precludes the plaintiff's claim. Because Shibley's arrest and detention were lawful, Officer Begin cannot be liable based upon these acts. As discussed above, however, Shibley has presented a triable issue as to whether the force Officer Begin employed was lawful. Officer Begin's use of force may not be justified, and, thus, could form the basis for a claim of intentional infliction of emotional distress. Nevertheless, the defendants argue they are entitled to summary judgment on Shibley's claim for intentional infliction of emotional distress because the plaintiff has failed to present a colorable argument that Officer Begin's conduct was extreme enough to support his claim.

New Hampshire's Supreme Court explicitly recognized the tort

33

of intentional infliction of emotional distress, and has quoted the Restatement (Second) of Torts approvingly. See <u>Morancy v. Morancy</u>, 134 N.H. 493, 495-96, 593 A.2d 1158, 1159-60 (1991). The <u>Morancy</u> court quoted the Restatement's definition of emotional distress, which provides:

> One who by extreme and outrageous conduct intention-ally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

<u>Id.</u> at 496, 593 A.2d at 1160. The Restatement provides that conduct is outrageous when "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous!'" Restatement, <u>supra</u>, § 46, comment d. Despite the defendants representations to the contrary, there is a factual dispute regarding the exchange between Officer Begin and Shibley. The court believes that if Shibley's version of the facts proves true, a jury could find that spraying him in the face with pepper spray without warning amounts to outrageous conduct. Thus, the court will deny the defendants' request for summary judgment on this claim.


   d. Assault and Battery

Defendants request summary judgment on Shibley's assault and

battery claims based on justification. Under New Hampshire law, "[a] law enforcement officer is justified in using non-deadly force upon another person when and to the extent that he reasonably believes it necessary to effect an arrest. . . ." RSA 627:5. This section creates an objective and subjective test. For his conduct to be justified, Officer Begin must have believed the force he used was necessary, and his belief must have been objectively reasonable. As discussed above, there are factual disputes about the circumstances surrounding Officer Begin's use of force. Based upon Shibley's version of events, a reasonable jury could find that Officer Begin's use of force was objectively unreasonable. Thus, the court must deny the defendants request for summary judgment on this count.

<u>Conclusion</u>

For the abovementioned reasons, Defendants' Motion for Summary Judgment (document 37) is granted in part and denied in part. The court orders judgment be entered for the defendants on counts I, II, VI, and IX. Summary judgment is denied as to

35

plaintiff's counts III, VII, and X.

**SO ORDERED.**

_____
Shane Devine
Senior Judge

March 26, 1998

cc:  H. Jonathan Meyer, Esquire
     Robert J. Meagher, Esquire