# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4271

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Charles Lavell Hardy, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 11, 2000

Filed: September 8, 2000

_____

Before McMILLIAN, ROSS, and WOOD,[1] Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Charles Lavell Hardy appeals from a final judgment entered in the United States District Court[2] for the District of Minnesota upon a jury verdict finding him guilty of possession with intent to distribute cocaine base (crack cocaine) and conspiracy to

_____

[1] The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

[2] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

distribute and possess with intent to distribute crack cocaine.  See United States v. Hardy, No. CR98-275(1) (D. Minn. Dec. 2, 1999) (hereinafter "judgment").  For reversal, Hardy argues that the district court abused its discretion in (1) quashing his Fed. R. Crim. P. 17(c) subpoena for internal police communications and (2) admitting Fed. R. Evid. 404(b) evidence of his 1992 and 1994 state drug convictions.  For the reasons discussed below, we affirm the judgment of the district court.

**Jurisdiction**

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

**Background**

Factual Background

The evidence introduced at trial, viewed in the light most favorable to the verdict, indicated the following.  On July 28, 1998, officers from the St. Paul (Minnesota) Police Department received information from a confidential reliable informant (CRI) that a narcotics transaction involving crack cocaine was to occur at around 5:00 p.m. at Mike's Bar in St. Paul.  The CRI informed the officers that he had agreed to purchase four ounces of crack cocaine from a individual named "Chuck" (later identified as Charles Hardy).  Based upon this information, the officers set up surveillance both inside and outside the bar.

Just after 5:00 p.m., a red Oldsmobile pulled up near the front door of the bar. The driver was identified as Hardy and the passenger as Larscene Turk.  Soon after, a white Oldsmobile pulled up alongside the red Oldsmobile.  The driver, later identified as Dennis Griffen, was alone in the vehicle.  Hardy and Turk then got out of the red

Oldsmobile, walked toward the front door of the bar, turned their heads from side to side, and appeared to be looking for someone. Hardy was carrying a bag with contents consistent with the color of crack cocaine. After a while, Hardy entered the bar, exited a short time later, and got back into the red Oldsmobile with Turk. Hardy continued to hold the white bag in his hand.

After conferring with Griffen, Hardy parked the red Oldsmobile in the west parking lot of the bar. Hardy and Turk then got into the white Oldsmobile with Griffen. The three then drove away in the white Oldsmobile and were later detained by local police officers. The officers searched the three individuals and the white Oldsmobile and found no controlled substances. However, a search of the red Oldsmobile revealed a bag containing 103 grams of crack cocaine. Officers subsequently seized approximately 300 grams of crack cocaine while executing warrants to search Hardy's apartment and storage locker.

Procedural History

Hardy was indicted in federal court on October 7, 1998, on two counts.[3] Count I charged him with possessing with intent to distribute cocaine base, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(A). Count II charged him with conspiring to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846.

Prior to trial, Hardy served St. Paul Police Lieutenant Dugan with a subpoena *duces tecum*, seeking taped copies of internal police radio communications from July 26-29, 1998, which allegedly included conversations between police officers and the CRI. The government subsequently filed a motion to quash this subpoena *duces tecum*

---

[3] Larscene Turk was indicted as a co-defendant on both counts; however, local police have not yet located Turk.

while Hardy moved pursuant to Fed. R. Crim. P. 17(c) for an order mandating production of the tapes. A magistrate judge[4] held a hearing on the motions and heard testimony from Lieutenant Dugan as to the relevant facts. At this hearing, Hardy narrowed his request to seek only the internal police radio communications from the time period 4:00 p.m. to 6:30 p.m., on July 28, 1998. Determining that Hardy had presented "no legally persuasive argument for production of the tapes" and that production would be "unreasonable," the magistrate judge granted the government's motion to quash and denied Hardy's motion for a Rule 17(c) order. See id. at 4-5 (Nov. 16, 1998) (magistrate's order). The district court affirmed the magistrate's order, concluding that the subpoena should be quashed because "it is an unsupported 'fishing expedition' that would impose an unjustified and unreasonable burden on the St. Paul Police Department." See id. at 3 (Feb. 9, 1999) (hereinafter "slip op.").

Hardy was tried by a jury on May 4-5, 1999. At trial, the government offered, in addition to the evidence described above, evidence of Hardy's two prior state drug convictions from 1992 and 1994, for selling crack cocaine and possessing crack cocaine with intent to distribute, respectively. Over Hardy's objections, the district court admitted the prior convictions under Fed. R. Evid. 404(b), as evidence of intent.

The jury found Hardy guilty on both counts. Hardy was sentenced on November 16, 1999, to a term of 240 months of imprisonment on each count (to be served concurrently), ten years of supervised release, and a special assessment of $200.00. See judgment. This appeal followed.

---

[4] The Honorable Jonathan Lebedoff, United States Magistrate Judge for the District of Minnesota.

-4-

**Discussion**

<u>Fed. R. Crim. P. 17(c)</u>

Hardy initially argues that the district court abused its discretion in quashing the subpoena *duces tecum* for the production of internal police radio communications and in not requiring production of this evidence under Fed. R. Crim. P. 17(c). Hardy contends that these transmissions would either confirm the presence of the CRI as an active participant in the attempted drug transaction on July 28, 1998, and thereby necessitate disclosure of the CRI's identity, <u>see</u> <u>Devose v. Norris</u>, 53 F.3d 201, 205-07 (8th Cir. 1995), or show that the CRI was not present and thereby impeach the police officers' testimony regarding the foundations for the stop and arrest of Hardy.

We first note that Fed. R. Crim. P. 16(a)(2) "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case." Nonetheless, a defendant may still be able to obtain materials not discoverable under Rule 16 by using Rule 17(c), "so long as they are evidentiary." <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 219 (1951) (partially upholding antitrust defendant's subpoena directing government to produce documents, books, and objects obtained during the course of its investigation, even though such materials were not discoverable under Rule 16). However, Rule 17(c) "was not intended to provide an additional means of discovery," and such evidentiary materials may be subpoenaed only if there is "a good-faith effort[] made to obtain evidence." <u>Id.</u> at 219-20. Moreover, in order to gain access to said materials, the moving party must show that the subpoenaed document (1) is relevant, (2) is admissible, and (3) has been requested with adequate specificity. <u>See</u> <u>United States v. Nixon</u>, 418 U.S. 683, 700 (1974) (<u>Nixon</u>). Thus, "[t]hese specificity and relevance elements require more than the title of a document and conjecture as to its contents." <u>United States v. Arditti</u>, 955 F.2d 331, 346 (5th Cir.) (<u>Arditti</u>) (noting that, in <u>Nixon,</u> the party seeking a Rule 17(c) order

-5-

met its burden by offering sworn testimony of participants in the recorded conversations, or by "giving reasons that permitted a rational inference of relevance"), cert. denied, 506 U.S. 998 (1992).

In this case, Hardy has failed to establish with sufficient specificity the evidentiary nature of the requested materials. He has stated why he wants to listen to the transmissions, but he cannot set forth what the subpoenaed materials contain, as he admitted before the district court and at oral argument before this court. He speculates that the tapes would establish whether or not the CRI was present at the attempted narcotics transaction, and thus either necessitate the disclosure of the identity of the CRI as a material witness or provide impeachment evidence against testifying police officers. See Brief for Appellant at 13. However, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c)]." Nixon, 418 U.S. at 701. Further, disclosure of the CRI's identity is only mandated if it is established that the CRI was an "active participant" in the drug transaction. Hardy has provided no factual support for this assertion, as noted by the magistrate judge. See magistrate's order at 4. Accordingly, Hardy has failed to satisfy his burden under Nixon.

Even assuming Hardy had established the minimal requirements for relevance, admissibility, and specificity under Nixon, the district court may still properly quash a subpoena under Rule 17(c) if "compliance would be unreasonable or oppressive." Thus, a district court may, in its discretion, determine whether "the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case." United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998) (citing United States v. Kalter, 5 F.3d 1166, 1169 (8th Cir.1993) (Kalter), cert. denied, 120 S. Ct. 117, 312 (1999)). Accordingly, we only reverse for abuse of discretion. See Kalter, 5 F.3d at 1169. Lieutenant Dugan testified at the initial motions hearing before the magistrate judge that, even though the request for transmissions had been narrowed to a two and a half hour time period, Dugan would still need to listen to approximately seventeen

and a half hours of tape, given that police transmissions occur on seven different channels, each producing a separate tape. Based on this testimony and Hardy's proffered reasons for requesting the tapes, both the magistrate judge and the district court found the subpoena to be "unreasonable." See id. at 4; slip op. at 3. Accordingly, because it appears that Hardy was attempting "to use the subpoena *duces tecum* as a discovery device, which it is not," Arditti, 955 F.2d at 346 (quoting United States v. Nixon, 777 F.2d 958, 969 (5th Cir. 1985)), we do not believe that the district court abused its discretion in quashing the subpoena for tape recordings.

Fed. R. Evid. 404(b)

Hardy further argues that the admission of his prior state drug convictions under Fed. R. Evid. 404(b) violated Fed. R. Evid. 403 as well as his constitutional rights. Hardy contends that evidence of his prior state drug convictions was irrelevant because those convictions involved much smaller quantities of crack cocaine (delivery of less than 10 grams in 1992 and possession of 1.4 grams in 1994) than in the instant case (possession of more than 400 grams). He also argues that the convictions are too remote in time to the instant offense and are overly prejudicial. Finally, Hardy argues that the cumulative effect of his prior state drug convictions, the admission of those convictions as evidence at trial, and the government's motion for an enhancement under 21 U.S.C. § 851 (thereby elevating the mandatory minimum sentence to twenty years) operated to violate his due process and equal protection rights.

We review the admission of Rule 404(b) evidence for abuse of discretion. See United States v. Green, 151 F.3d 1111, 1113 (8th Cir. 1998) (Green) ("The district court has broad discretion in determining whether to admit evidence of other crimes, and this Court will overturn its decision only if it can be shown that the evidence clearly had no bearing upon any issues involved."). Evidence of prior bad acts is not admissible under Rule 404(b) "solely to prove the defendant's criminal disposition," United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir.1995), but is admissible to show

"proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Such evidence is admissible if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." Green, 151 F.3d at 1113.

As to the amount of crack cocaine involved in Hardy's prior convictions, we note that "evidence of prior possession of drugs, even in an amount consistent only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element." United States v. Logan, 121 F.3d 1172, 1178 (8th Cir. 1997); see also United States v. Oates, 173 F.3d 651, 659-60 (8th Cir.) (rejecting defendant's argument that prior conviction involving 4.4 grams of crack cocaine was irrelevant to offenses at issue, which involved 53.1 grams of crack cocaine), cert. denied, 120 S. Ct. 213 (1999). Accordingly, we do not believe that the district court abused its discretion in determining that Hardy's 1992 and 1994 drug convictions were relevant to the issue of intent in the instant case. With respect to remoteness in time, we apply "a standard of reasonableness, as opposed to a standard comprising an absolute number of years," for the purposes of Rule 404(b). Green, 151 F.3d at 1113. Hardy's prior drug convictions occurred four and six years prior to his 1998 arrest for the charged offense. We conclude that, in this case, the district court did not abuse its discretion in classifying these separations as "well within permissible time boundaries for the introduction of Rule 404(b) evidence." Id. (citing Eighth Circuit cases permitting introduction of Rule 404(b) evidence despite separations in occurrences of offenses ranging from twelve to seventeen years). In sum, we conclude that the district court did not abuse its discretion in admitting pursuant to Rule 404(b) the evidence of Hardy's prior drug convictions.

Finally, Hardy's constitutional claims are without merit. Where a defendant asserts that the cumulative effect of certain alleged errors has rendered his trial unfair and violated his constitutional rights, "we may reverse where the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." United States v. Riddle, 193 F.3d 995, 998 (8th Cir. 1999). We have reviewed the record and find that this is not such a case.

**Conclusion**

For the reasons we have stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.