# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1231

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Jamie Lamont Hawthorne, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  October 17, 2000
Filed:   December 19, 2000

_____

Before HANSEN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jamie Lamont Hawthorne was convicted of possessing with intent to distribute approximately 50 grams of crack cocaine, being a felon in possession of a firearm, and carrying a firearm in connection with a drug trafficking crime. Hawthorne's motion for judgment of acquittal or new trial was denied, and the district court[1] sentenced him to 120 months on the first two counts and 60 months consecutive on the third. Hawthorne now appeals his convictions and his sentence. We affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

On April 18, 1997, a two door Ford Bronco driven by Hawthorne was stopped by Minneapolis police officers Victor Mills and Michael Fontaine after it had crossed several lanes of traffic without signaling and almost collided with the patrol car. Officer Mills approached the driver side of the Bronco while Fontaine went over to the passenger side. After Mills discovered that Hawthorne lacked photo identification and proof of insurance, he asked him to come to the patrol car while he checked his temporary driver license and identification. Fontaine had meanwhile noticed that the passenger, Che Jamar Fields, was not wearing a seat belt. He asked Fields to step out of the car, and Fields got out without closing the door. Fontaine looked inside with his flashlight and saw a package containing what looked like crack cocaine on the floor behind the driver seat. He retrieved the package which was later found to contain 47.8 grams of crack. After Mills placed Hawthorne under arrest at a signal from Fontaine, Hawthorne told him that Fields had a gun. The police searched the Bronco and found a loaded handgun wrapped in a white towel under the driver seat. The Bronco was impounded, and an inventory search revealed 2.2 grams of unpackaged crack tucked into one of the seats.

On the way to the police station, Hawthorne told Mills that he had had a prior arrest for a drug charge and that he "didn't need any more problems." He said that the handgun and crack belonged to Fields and repeated that story the next day during a recorded conversation with Minneapolis police officers Greg Freeman and Adam Grobove. He said that he had not known the drugs and gun were in the car until immediately before the traffic stop when he saw Fields pull them from inside his jacket and place them in his lap. Hawthorne said that Fields must have tried to hide them under his seat after he left for the patrol car. When the officers asked Hawthorne if his fingerprints were likely on the crack or the handgun, he said it was possible because he had been trying to get Fields to put them back into his jacket. The officers also learned that Hawthorne had recently bought the Bronco for $3,000 cash. Hawthorne said that he wanted to cooperate and that he could obtain about two kilograms of

cocaine if released, but no agreement was reached.

Hawthorne initially was charged in state court, but a federal grand jury later returned a two count indictment against him. Count I charged him with possessing with an intent to distribute approximately 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and Count II charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). A superseding indictment was later filed that added Count III, carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). The United States also filed an information under 21 U.S.C. § 851, requesting that the statutory minimum sentence for Count I be increased because Hawthorne had two prior felony drug convictions. Hawthorne stipulated to the prior felony convictions for purposes of sentencing but moved to suppress the crack and the handgun, as well as statements he had made. He requested that the magistrate judge personally inspect the Bronco to judge whether the crack would have been visible from where Fontaine was standing. The magistrate judge declined the inspection request, as did the district court which adopted the magistrate judge's report and recommendation and denied the suppression motion.

At trial the handgun and crack were entered into evidence, as were Hawthorne's 1994 conviction in Arkansas for possession of marijuana with intent to deliver and his 1997 conviction in Minnesota for possession of crack. The district court admitted the prior felony convictions under Fed. R. Evid. 404 (b) and instructed the jury that the evidence was to be used for the limited purpose of considering intent, knowledge, and motive. The jury's verdict was guilty on all three counts. Hawthorne's motion for judgment of acquittal, acquittal notwithstanding the verdict, or new trial was denied. At sentencing, Hawthorne was assigned a base offense level of 30 for possessing 49.9 grams of cocaine base. See U.S. SENTENCING GUIDELINES MANUAL §§ 2D1.1(a)(3) and (c)(5) (2000). He was placed in Criminal History Category III, and because of his prior felony drug convictions the statutory mandatory minimum sentence on Count I was 120 months. See 21 U.S.C. § 841(b)(1)(B) (1999). The court sentenced

Hawthorne to the 120 month mandatory minimum on Count I and to 120 months concurrent on Count II. See 18 U.S.C. § 924 (a)(2) (2000). He received 60 months on Count III, consecutive to the other sentences imposed. See id. at § 924 (c)(1)(A)(i).

On appeal, Hawthorne challenges both his conviction and his sentence. He argues that the package of crack and other evidence obtained after its seizure should have been suppressed. He says that the agent reports and testimony regarding the location of the package were equivocal and inconsistent, that the police photographs did not show that the crack could have been seen from outside the Bronco, and that the court erred by not inspecting the vehicle. He contends that evidence of his prior convictions should not have been admitted because he had stipulated to their existence for sentencing purposes, and the evidence was unfairly prejudicial before the jury. Hawthorne also challenges his sentence because the government's notice seeking to increase the statutory minimum was signed by an Assistant United States Attorney, rather than by the United States Attorney as required by 21 U.S.C. § 851, and because there was insufficient evidence that the substance was crack so he should have been sentenced for possession of powder cocaine. He seeks a judgment of acquittal, a new trial, or resentencing, depending on the resolution of his issues.

The government counters that no constitutional rights were violated, that the evidence was properly admitted, that the information was not invalid because it was signed by an Assistant United States Attorney, and that Hawthorne's sentence would have been the same if the drug had been powder cocaine.

We review fact findings on a motion to suppress for clear error. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir. 1998). Giving greater weight to some of the testimony is not clear error "unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995). The court's

findings were supported by the evidence, and the finding that the package was in plain view was not clear error. The court did not abuse its discretion by deciding it was unnecessary to make a personal inspection of the Bronco.

The admission of evidence of prior bad acts is reviewed for abuse of discretion. See United States v. Hardy, 224 F.3d 752, 756 (8th Cir. 2000). Rule 404(b) permits such evidence when offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." FED. R. EVID. 404(b). Evidence of prior drug possession, regardless of the amount, is admissible to show knowledge and intent when intent is an element of the offense charged. See Hardy, 224 F.3d at 757; United States v. Davidson, 195 F.3d 402, 408 (8th Cir. 1999), cert. denied, 120 S. Ct. 1218 (2000), and cert. denied, 120 S. Ct. 1732 (2000). Hawthorne's mere presence defense put his knowledge and intent at issue. See United States v. Tomberlin, 130 F.3d 1318, 1320 (8th Cir. 1997). Although the district court might well have articulated more detailed findings in ruling on Hawthorne's objection, we do not believe admission of the evidence violated either Rule 404(b) or Rule 403. The relevance of the evidence outweighed any potential prejudice; it was used for a limited purpose and the district court gave a limiting instruction. We find no abuse of discretion in its admission.

In order for a sentence to be enhanced under § 841(b)(1) on the basis of the defendant's prior convictions, the United States Attorney is to file before trial an information "stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1) (1999). Hawthorne's argument that the statute requires that the information be signed by the United States Attorney is without merit. The statute does not direct that the United States Attorney personally sign the document. As a practical matter, an official with much responsibility cannot carry out every aspect of the duties of the office. See, e.g., United States v. Kleve, 465 F.2d 187, 189-90 (8th Cir. 1972) (United States Attorney may delegate authority to Assistant United States Attorney to file an 18 U.S.C. § 3731 certificate); Brown v. United States, 257 F. 703, 705 (9th Cir. 1919)

(information not fatally defective because signed by an Assistant United States District Attorney); see also Parish v. United States, 100 U.S. 500 (1879) (the acts of the Assistant Surgeon General have the same validity as those of the Surgeon General). The power to file enhancement informations has been expressly delegated to Assistant United States Attorneys. See UNITED STATES ATTORNEYS MANUAL § 9-2.000 (an Assistant United States Attorney must seek approval not to file an enhancement information unless enhancement would not affect the guideline range); id. at § 9-27.300 ("every prosecutor" must consider filing an enhancement information equivalent to filing charges). Moreover, an information signed by an Assistant United States Attorney is adequate for the purpose of 21 U.S.C. § 851(a)(1), which is to ensure that a defendant has notice that the government seeks an enhanced sentence based on prior convictions. See United States v. Johnson, 944 F.2d 396, 407 (8th Cir. 1991) (purpose of 21 U.S.C. § 851(a)(1) is to provide notice to defendant). The sentencing information was not defective.

Hawthorne argues that the district court erred in finding that the package seized by officer Fontaine contained crack because the substance had liquified by the time of trial. Hawthorne says that since there was no evidence why it had liquified, the district court should have sentenced him for possession of powder cocaine rather than for possession of crack. He would then have had a base offense level of 14 rather than 30. By finding Hawthorne guilty on Count I of the indictment, the jury found beyond a reasonable doubt that the substance was cocaine base. The jury finding was amply supported by the evidence. A photograph of the substance that was taken on the day of Hawthorne's arrest shows a solid rocklike substance. The police officers who saw the drugs on the day of arrest and the government chemist who did the testing all testified that the substance was crack. Hawthorne also called the substance "crack" several times during his interview with Officer Freeman. A fact finder may rely on the observations of those familiar with crack cocaine when it makes findings regarding the identity of the drug in question. See, e.g., United States v. Deering, 179 F.3d 592, 596 (8th Cir. 1999) (per curiam), cert. denied, 120 S. Ct. 361 (1999); United States v.

Goodson, 165 F.3d 610, 615 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999). The district court did not err in its fact finding or in its application of the guidelines.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.