[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 7, 2008
THOMAS K. KAHN
CLERK

No. 07-13374

_____

D. C. Docket No. 03-00003-CR-OC-10-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,
Cross-Appellee,

versus

FREDERICK EUGENE JACKSON,

Defendant-Appellee,
Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 7, 2008)

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

The government appeals Frederick Eugene Jackson's 240-month concurrent sentences imposed for his three felony drug offenses. Even before this case, Jackson had four prior felony convictions. On appeal, the government argues that the district court erred in striking its 21 U.S.C. § 851 prior felony notice. Jackson responds that we lack jurisdiction over the government's appeal because it did not appeal as to the § 851 notice before sentencing. Jackson cross-appeals his convictions and sentences.

After review and oral argument, we conclude that jurisdiction exists over the § 851 notice issue and that the district court erred in striking the government's § 851 notice. Thus, we vacate Jackson's sentences and remand for resentencing with the § 851 notice in place. In the cross-appeal, we affirm Jackson's convictions and reject his sentencing claims.

## I. BACKGROUND

This is the second appeal in this case, and the background is important to the issues before us. We start at the beginning.

### A.      Indictment and Pre-trial Motions

In a six-count indictment against Jackson and three others, Jackson was charged with: (1) conspiracy to distribute fifty grams or more of cocaine base between May 2002 and June 12, 2002, in violation of 21 U.S.C. §§ 841(b)(1)(A)

2

and 846 (Count I); (2) distribution of, and aiding and abetting in the distribution of, five grams or more of cocaine base on June 6, 2002, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count V); and (3) distribution of, and aiding and abetting in the distribution of, fifty grams or more of cocaine base on June 12, 2002, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count VI). On February 6, 2003, Jackson made an initial appearance before a magistrate judge.

Jackson and his three codefendants were scheduled to be tried together. Jackson's codefedants filed pre-trial motions, including a motion to substitute counsel, two motions in limine, and motions for a continuance to negotiate a plea agreement with the government. Jackson objected to the continuance motions on the grounds that his speedy trial rights were being violated and requested a severance. The district court granted the codefendants' joint continuance motions and denied Jackson's motion for a severance. Ultimately, each of Jackson's codefendants accepted a plea deal with the government, and Jackson proceeded to trial alone. Several days before trial, Jackson filed a motion to dismiss for violation of his speedy trial rights. The district court denied his motion.

Before trial, the government filed a § 851 notice listing Jackson's four prior felony drug convictions and attached a copy of the judgment for each conviction. The government's § 851 notice stated that, based on the prior convictions, the

3

enhanced penalties in § 841(b)(1)(A) and (B) applied.  The listed penalties were mandatory terms of life imprisonment for Counts I and VI and a minimum term of ten years' imprisonment for Count V.  The notice stated that it was submitted by United States Attorney Paul I. Perez and was signed by Assistant United States Attorney D. Rodney Brown.

**B.     Trial**

On May 5, 2003, which was eighty-eight days after Jackson made his initial appearance, Jackson's trial began.  The evidence at trial established that codefendant Rufus Montgomery sold a confidential informant ("CI") 9.7 grams of cocaine base on May 23, 2002.  On June 6, 2002, the CI contacted Montgomery to purchase a larger amount of cocaine base.  Montgomery introduced Jackson to the CI, and Jackson sold the CI one ounce of cocaine base for $800.  On June 12, 2002, Jackson sold the CI three ounces of cocaine base for $2,400.  The government introduced audiotapes of conversations between Jackson and the CI and videotapes of the June 6 and June 12 drug transactions.

At the government's request, the district court admitted into evidence the cocaine base that Jackson sold the CI on June 6, 2002 (Exhibit 8) and June 12, 2002 (Exhibit 9).  According to the testimony of Peter Echevarria, a Drug Enforcement Agency ("DEA") forensic chemist, Exhibit 8 yielded a net weight of

4

17.9 grams of cocaine base and Exhibit 9 yielded a net weight of 59.4 grams of cocaine base.

Jackson presented testimony from Wayne Morris, a forensic chemist, that Echevarria's analysis was unreliable because Echevarria's net weight included water and "[t]he only reliable weight in this type of situation would be the dry weight." Morris testified that the net weight of the drugs after the water was removed was 13.2 grams of cocaine base for Exhibit 8 and 43.3 grams of cocaine base for Exhibit 9.

At the close of the government's case, Jackson moved for a judgment of acquittal and renewed his motion after he presented his defense. The district court denied his motions.

The jury found Jackson guilty on all three drug counts. The jury specifically found that Count I (conspiracy) involved fifty grams or more of cocaine base, Count V (Exhibit 8) involved five grams or more of cocaine base, and Count VI (Exhibit 9) involved fifty grams or more of cocaine base.

After the jury's verdict, Jackson again filed a motion for judgment of acquittal or, alternatively, a new trial. The district court denied Jackson's motion for judgment of acquittal, but granted Jackson's motion for a new trial. The district court determined that DEA Special Agent Frank Thompson's testimony–

that Jackson had threatened a potential witness–was plain error because it was not responsive to defense counsel's question on cross-examination and was interjected intentionally to prejudice the jury. The government appealed the district court's new-trial order.

**C.      First Appeal**

On the first appeal, a prior panel of this Court concluded that the district court abused its discretion in granting Jackson's motion for a new trial. United States v. Jackson, No. 03-15195, slip op. at 40 (11th Cir. Nov. 16, 2004) (unpublished). After a detailed review of the trial evidence, the Court determined that the evidence "overwhelmingly demonstrates that Mr. Jackson distributed crack cocaine on June 6, 2002 and June 12, 2002, and that the volunteered testimony did not affect his substantial rights." Id. at 36. The Court listed fifteen salient facts "that clearly establish[ed] that a rational juror would find beyond a reasonable doubt that Mr. Jackson was correctly identified as the perpetrator of these offenses by the Government's witnesses." Id. The Court also noted that "[t]he evidence that Mr. Jackson sold crack cocaine to [the CI] on June 6, 2002 and June 12, 2002 was unrebutted by any defense testimony." Id. at 39. The Court concluded that "Jackson has failed to carry his burden of demonstrating that he was prejudiced by Special Agent Thompson's non-responsive testimony" and

6

thus vacated the new-trial order and remanded Jackson's case for sentencing. Id. at 39-40.

**D.    Sentencing**

On remand, the presentence investigation report ("PSI") determined Jackson was a career offender, pursuant to U.S.S.G. § 4B1.1, and calculated his advisory guidelines range as 360 months to life imprisonment. However, the § 851 notice triggered a mandatory life sentence for Jackson under 21 U.S.C. § 841(b)(1)(A). See 21 U.S.C. § 841(b)(1)(A) (stating that anyone who violates § 841(a) after two or more prior convictions for a felony drug offense shall be sentenced to a mandatory term of life imprisonment). In his objections to the PSI, Jackson argued, inter alia, the four prior convictions listed in the § 851 notice were invalid and moved to dismiss the § 851 notice. Jackson also claimed the government's § 851 notice was insufficient because it was not signed and filed by the United States Attorney.

At the sentencing hearing, the district court struck the § 851 notice, stating:

> I'm going to rule that the information had to have been personally signed or approved by the U.S. Attorney himself, him or herself, in this case Paul Perez.
> And based on your representations that he did not or that you have no information that he personally approved this, I'm going to make that finding.
> This is a very serious thing.

7

The government objected, asking, "Just to clarify, the Court's ruling is that because it was not personally signed by the United States Attorney, the Court is going to strike the information?" The court replied, "Right. Or personally approved by him."

The district court found that the government established Jackson's prior convictions by a preponderance of the evidence and overruled Jackson's objection to the career-offender enhancement under the guidelines. Thus, even without the § 851 notice, Jackson's advisory guidelines range was 360 months to life imprisonment. The district court inquired as to the mandatory minimum sentences without the § 851 enhancement (which were ten years' imprisonment on Counts I and VI and five years' imprisonment on Count V) and the sentences received by Jackson's three codefendants who pled guilty (which were 51 months, 120 months, and 188 months). After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Jackson below the advisory guidelines range to concurrent terms of 240 months' imprisonment on each count.

The government appeals Jackson's 240-month sentences on the ground that the district court erred in striking its § 851 notice and in declining to apply the statutory mandatory penalty enhancements to Jackson's sentences based on his four prior drug convictions. Jackson cross-appeals his convictions and sentences.

## II. DISCUSSION

### A.    Appellate Jurisdiction

As a threshold matter, we reject Jackson's arguments that we lack jurisdiction over the government's appeal.[1]

### 1.    Approval for Appeal under § 3742(b)

Jackson's first argument is we lack jurisdiction because the government has not established the existence of the personal approval of the government's appeal by the Attorney General, Solicitor General, or a deputy solicitor general required by 18 U.S.C. § 3742(b).[2]  However, this Court has rejected this same argument multiple times and stated the § 3742(b) approval requirement is not jurisdictional. See United States v. Abbell, 271 F.3d 1286, 1290 n.1 (11th Cir. 2001); United States v. Hall, 943 F.2d 39, 41 (11th Cir. 1991); United States v. Long, 911 F.2d 1482, 1484-85 (11th Cir. 1990).

We start with Long, where this Court reviewed a prior version of § 3742(b)

---

[1]We review de novo jurisdictional questions, United States v. Cartwright, 413 F.3d 1295, 1299 (11th Cir. 2005), and issues of statutory construction, United States v. Frye, 402 F.3d 1123, 1126 (11th Cir. 2005).

[2]Section 3742(b) currently provides that the government may appeal a defendant's final sentence to raise four types of challenges, including a claim that a sentence "was imposed in violation of law."  18 U.S.C. § 3742(b).  Section 3742(b) also states that "[t]he Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General."  Id.

and denied a motion to dismiss the government's appeal for failure to obtain a valid approval of the appeal. Long, 911 F.2d at 1484. The Court stated that Congress imposed the approval requirement in order to assure that the government did not appeal every sentence below the guidelines range and concluded that "[t]his policy may be fulfilled . . . without interpreting the personal approval requirement as jurisdictional." Id. (emphasis added). Although only a delegate signed the approval, the Court observed that "[r]egardless of whether the Attorney General and Solicitor General or their delegates actually sign the authorization, the Justice Department's present procedures ensure that proposed appeals will be reviewed for consistency with Congress's policy directives." Id.

In Hall, this Court again reviewed a prior version of § 3742(b)[3] and concluded jurisdiction existed over the government's appeal of the district court's failure to impose a statutory minimum sentence. Hall, 943 F.2d at 41. The

---

[3]The Hall Court reviewed the original version of § 3742(b), which provided, in relevant part, that "'[t]he government may file a notice of appeal in the district court for review of an otherwise final sentence if . . . the Attorney General or the Solicitor General personally approves the filing of the notice of appeal.'" Hall, 943 F.2d at 41 (quoting 18 U.S.C. § 3742(b) (1987)) (omission in original). The Long Court reviewed the amended version of § 3742(b), which provided, in relevant part, that "'[t]he Government, with the personal approval of the Attorney General or the Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence.'" Long, 911 F.2d at 1483 n.1 (quoting 18 U.S.C. § 3742(b) (1990)). However, as noted in Long, "[t]he import of both versions is manifestly the same; the Attorney General or the Solicitor General must give his personal approval for the filing of . . . the appeal." Long, 911 F.2d at 1488 n.9 (Birch, J., dissenting).

government obtained approval before filing a notice of appeal but did not file the § 3742(b) authorization until after the notice of appeal was filed. The Court concluded that "[t]he statute does not require that approval be in writing or that proof of approval be included in the appellate record." Id. The Court noted it had concluded in Long that "the government's failure to obtain the personal approval required by Section 3742(b) was not a ground for dismissal" and thus held "the same conclusion must be reached in the present situation, in which the government actually did obtain personal approval from the Solicitor General before filing the notice of appeal, but failed to include the proof with the notice of appeal." Id. The Court also noted that the revised version of § 3742(b), which is the version at issue in this case, "seems to indicate that approval before the filing of a notice of appeal is no longer required" and "appears to permit the government to obtain the required approval after the notice of appeal is filed." Id. at 41 nn.1-2.

In Abbell, 271 F.3d 1286 (11th Cir. 2001), this Court denied a motion to dismiss a government appeal for lack of jurisdiction under the current version of § 3742(b). Abbell, 271 F.3d at 1290 n.1. The Court, citing Hall, concluded that "the requirement that the government obtain approval under 18 U.S.C. § 3742(b) to prosecute this appeal is not jurisdictional" and also noted that "[t]he government stated in its response to the motion to dismiss that approval was

obtained." Id.

As stated in Long, Hall, and Abbell, the § 3742(b) approval requirement is not jurisdictional. Furthermore, the government's reply brief in this appeal states that the Deputy Solicitor General, pursuant to designation by the Solicitor General, approved the appeal shortly after the notice of appeal was filed and contains written documentation of the approval.[4] Thus, we reject Jackson's argument that we lack jurisdiction to hear the government's appeal due to the § 3742(b) requirement.

2.     Presentence Appeal under § 851(d)(2)

As discussed below, § 3742(b) also provides that the government may appeal from any sentence "imposed in violation of law." 18 U.S.C. § 3742(b). Section 851(d)(2) provides that "the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination." 21 U.S.C. § 851(d)(2).[5] Jackson argues that we lack jurisdiction because § 851(d)(2)

---

[4]Attached to the government's reply brief are documents stating that Deputy Solicitor General Michael Dreeben, pursuant to designation by the Solicitor General, approved the government's appeal on August 28, 2007.

[5]Section 851(d) reads, in full:
If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination. If no such request is made, the court shall impose sentence as provided by this part. The person may appeal from an order postponing sentence

12

overrides § 3742(b) and requires the government to request a postponement of sentencing in order to appeal the district court's striking of a § 851 notice.

Jackson's second jurisdictional argument is equally without merit. Nothing in the plain language of § 851(d)(2) requires the government to appeal the striking of a § 851 notice <u>before the actual sentencing occurs</u>. Rather, § 851(d)(2) provides only that the district court, upon request by the government, shall postpone sentencing in limited circumstances to allow for an interlocutory appeal. The statutory language in § 851(d)(2) does not mandate that the government pursue an interlocutory appeal or prohibit a later appeal of a final sentence under § 3742(b) on the grounds that an enhanced penalty should have been applied. Section 851(d)(2) permits the government to appeal before sentencing but does not require it.

The Seventh Circuit rejected a similar jurisdictional challenge that claimed the government must appeal before sentencing when the district court does not apply a § 851-enhanced penalty. <u>United States v. Gomez</u>, 24 F.3d 924, 928 (7th Cir. 1994). The Seventh Circuit concluded that "§ 851(d)(2) does not purport to override other statutes authorizing appeals-in this case, 18 U.S.C. § 3742." <u>Id.</u>

as if sentence had been pronounced and a final judgment of conviction entered. 21 U.S.C. § 851(d)(2).

13

The Seventh Circuit explained that "Congress enacted § 851(d)(2) in 1970, when

federal prosecutors lacked any general authority to appeal from final decisions in

criminal cases" and the pre-sentence appeal procedure was developed out of a

concern that a government appeal of a sentence would violate the Double Jeopardy

Clause. Id. After the Supreme Court clarified that a government appeal of a

sentence would not violate the Double Jeopardy Clause, Congress enacted the

Sentencing Reform Act of 1984 and granted the government the authority to

appeal a sentence. Id. Section 3742(b) now allows the government to appeal from

any sentence that "'was imposed in violation of law.'" Id. (quoting 18 U.S.C. §

3742(b)). After reviewing the statutory evolution of the government's right to

appeal a sentence in § 851 and § 3742, the Seventh Circuit concluded that

§ 851(d)(2) did not provide the exclusive avenue for appeal in this situation, as

follows:

> Section 851(d)(2) can hardly be thought to repeal or qualify a statute
> enacted 14 years later. When Congress enacted § 851(d)(2) a
> pre-sentence appeal made sense; there would be no post-sentence appeal
> by either side, so there was no prospect of duplication. Today a
> pre-sentence appeal would fragment the case. Piecemeal appeals are
> never less appropriate than in criminal cases, and we have no indication
> that Congress has made such division obligatory.

Id.

Similarly, we conclude that § 851(d)(2) does not require a presentence

14

appeal, particularly in light of the government's authority to appeal an illegal sentence under § 3742(b). Thus, we reject Jackson's jurisdiction argument that the government must bring a § 851 appeal before sentencing.

## B.    The § 851 Notice

The next question is whether the government complied with § 851(a)(1) when its § 851 notice bore the United States Attorney's name, but was not personally signed or approved by him.[6]

For the government to enhance a defendant's sentence based on prior convictions, "the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1) (emphasis added).[7] The purpose of § 851(a)(1) is to "allow the defendant to contest the accuracy of the information . . . [and] to have ample time

---

[6]We review de novo questions regarding the adequacy of a § 851 notice. See United States v. Ramirez, 501 F.3d 1237, 1239 (11th Cir. 2007).

[7]Section 851(a)(1) provides, in full:
No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.
21 U.S.C. § 851(a)(1).

to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." United States v. Williams, 59 F.3d 1180, 1185 (11th Cir. 1995).

Contrary to Jackson's argument, § 851 does not say that the United States Attorney must personally sign or approve the information. See United States v. Hawthorne, 235 F.3d 400, 404 (8th Cir. 2000) (noting § 851(a)(1) "does not direct that the United States Attorney personally sign the document").[8] We conclude, as the Eighth Circuit did in Hawthorne, that "an information signed by an Assistant United States Attorney is adequate for the purpose of 21 U.S.C. § 851(a)(1), which is to ensure that a defendant has notice that the government seeks an enhanced sentence based on prior convictions." Id. As also noted by the Eighth Circuit, "an official with much responsibility cannot carry out every aspect of the duties of the office" and may delegate the power to file an enhancement to Assistant United States Attorneys. Id. We agree with the Eighth Circuit that the United States Attorney has delegated that power to the Assistant United States Attorneys.[9]

---

[8]We reject Jackson's argument that Hawthorne is based upon a "tenuous extrapolation" of United States v. Kleve, 465 F.2d 187 (8th Cir. 1972). The Eighth Circuit stated in Kleve that "[d]efendants' contention that the Assistant United States Attorney in charge of the prosecution cannot be delegated authority by the United States Attorney to file the certificate lacks merit. We hold that we have jurisdiction to entertain this appeal." Id. at 190.

[9]The Eighth Circuit further explained that:
The power to file enhancement informations has been expressly delegated to

16

We recognize that the § 851 "notice requirement is jurisdictional: unless the government strictly complies, the district court lacks jurisdiction to impose the enhanced sentence." United States v. Ramirez, 501 F.3d 1237, 1239 (11th Cir. 2007); see United States v. Thompson, 473 F.3d 1137, 1144 (11th Cir. 2006), cert. denied, 127 S. Ct. 2155 (2007); Harris v. United States, 149 F.3d 1304, 1306 (11th Cir. 1998). However, the government here strictly complied with § 851. First, the government filed its § 851 notice a week before Jackson's trial began, which complied with § 851(a)(1)'s requirement that the notice be filed "before trial, or before entry of a plea of guilty." 21 U.S.C. § 851(a)(1). This allowed Jackson to decide whether to plead guilty or go to trial and to plan his trial strategy with full knowledge of the penalties he faced. Jackson does not contend that the lack of signature or approval by the United States Attorney interfered with or affected his defense strategy.[10]

_____

Assistant United States Attorneys. See United States Attorneys Manual § 9-2.000 (an Assistant United States Attorney must seek approval not to file an enhancement information unless enhancement would not affect the guideline range); id. at § 9-27.300 ("every prosecutor" must consider filing an enhancement information equivalent to filing charges).

Hawthorne, 235 F.3d at 404. As pointed out in the briefs and at oral argument in this case, the United States Attorneys' Manual requires the Assistant United States Attorney to seek approval if the Assistant United States Attorney is not filing the enhancement. Otherwise, the Assistant United States Attorney has a duty to file the enhancement.

[10]Compare Harris, 149 F.3d at 1306-07 (concluding § 851 notice did not comply with § 851(a)(1) where government filed it after defendant's guilty plea), and United States v. Noland, 495 F.2d 529, 532-33 (5th Cir. 1974) (concluding § 851 notice did not comply with § 851(a)(1)

17

Second, the § 851 notice accurately listed Jackson's four prior felony drug convictions, with attached copies of the judgments in each case, and stated the enhanced statutory penalties that resulted from those prior convictions. Thus, Jackson had clear notice of the prior convictions relied upon by the government so he could challenge the accuracy of the facts alleged.[11] In fact, before and at sentencing, Jackson raised several challenges to the § 851 notice and claimed, inter alia, that the prior convictions were invalid. The district court ultimately found Jackson had the prior convictions.[12] Again, Jackson does not contend that the lack of signature or approval by the United States Attorney affected the challenges he raised to the accuracy of the information in the § 851 notice. Thus, the government's § 851 notice here fully satisfied the purposes of § 851(a)(1).

---

where government filed it one day after sentencing), with Thompson, 473 F.3d at 1144-47 (concluding § 851 notice complied with § 851(a)(1) where government filed it before first trial that resulted in a hung jury, a superseding indictment was returned with more charges, and the government did not file a second § 851 notice until after defendant was convicted in the second trial).

[11]Compare United States v. Rutherford, 175 F.3d 899, 903-04 (11th Cir. 1999) (concluding § 851 notice did not comply with § 851(a)(1) where the government failed to list any prior convictions), and United States v. Olson, 716 F.2d 850, 851-54 (11th Cir. 1983) (concluding that the district court erred in enhancing the defendant's sentence where the government failed to file a § 851 notice), with Ramirez, 501 F.3d at 1239-40 (concluding that § 851 notice filed before a new information with amended charges was filed under a different case number complied with § 851(a)(1)).

[12]On appeal, Jackson does not challenge the accuracy of the four prior convictions in the § 851 notice.

Because the district court erred in striking the government's § 851 notice, we vacate Jackson's sentences and remand to the district court for resentencing with the § 851 notice in place.

## C.     Cross-Appeal

Jackson cross-appeals his convictions and sentences on the grounds that: (1) the district court's decision to grant a continuance to his codefendants to allow them to negotiate plea agreements violated his speedy trial rights under the Speedy Trial Act and the Sixth Amendment;[13] and (2) the district court erred in denying his motion for judgment of acquittal and enhancing his sentences because the evidence was insufficient to prove the drug quantity charged in the indictment.[14] We affirm Jackson's convictions and sentences.

Taking the last argument first, the trial evidence, as the panel in the first appeal of Jackson's case observed, "clearly establish[ed] that a rational juror would find beyond a reasonable doubt that Mr. Jackson was correctly identified as

---

[13]We review de novo the district court's denial of a defendant's motion to dismiss based upon the Speedy Trial Act or his Sixth Amendment right to a speedy trial. United States v. Harris, 376 F.3d 1282, 1286 (11th Cir. 2004).

[14]We review de novo the district court's denial of a motion for judgment of acquittal based on sufficiency of the evidence. United States v. Evans, 473 F.3d 1115, 1118 (11th Cir. 2006), cert. denied, 128 S. Ct. 44 (2007). In doing so, we draw all reasonable inferences in favor of the government and determine whether "a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." Id. (quotation marks omitted).

the perpetrator of these offenses by the Government's witnesses." Jackson, No. 03-15195, slip op. at 36. Furthermore, the testimony from Jackson's codefendant Rufus Montgomery, the CI, and expert witness Echevarria provided sufficient evidence to support the jury's drug quantity finding in the special verdict. Thus, we reject Jackson's arguments that the district court erred in denying a judgment of acquittal due to insufficiency of the evidence and/or any alleged material variance between the type of drugs charged in the indictment and the trial evidence. We also reject Jackson's related argument that these alleged errors in the drug quantity finding resulted in a sentence above the statutory maximum in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).

Jackson's speedy trial arguments are also unfounded. Eighty-eight days passed from Jackson's initial appearance on February 6, 2003 to the start of his trial on May 5, 2003. For sake of argument, we put aside the question of whether the contested time during which the proceedings were continued is excludable. Even without that contested time, fifty-nine of these eighty-eight days were excludable from the seventy-day speedy-trial clock due to other pre-trial motions filed by Jackson's codefendants and the time they were under advisement by the

district court.[15]  See 18 U.S.C. § 3161(h)(1)(F) (excluding from computation of time "delay resulting from any pre-trial motion"); 18 U.S.C. § 3161(h)(1)(J) (excluding from computation of time "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"); 18 U.S.C. § 3161(h)(7) (excluding from computation of time "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted").  Without those fifty-nine days, only twenty-nine days actually ran on Jackson's Speedy Trial Act clock.  Thus, Jackson's Speedy Trial Act rights were not violated.[16]

## III.  CONCLUSION

In conclusion, the district court erred in striking the government's § 851 notice, and thus we vacate Jackson's sentence and remand for resentencing with

---

[15]The pre-trial motions included in this fifty-nine day calculation were Jackson's codefendants' motion to substitute counsel and motions in limine, which clearly are excluded under 18 U.S.C. § 3161(h)(1)(F) and (h)(7).  Because the time excluded for these motions brings Jackson within the seventy-day Speedy Trial Act period, it is unnecessary for us to discuss whether the time that the continuance motions, or any other pre-trial motions, were pending is excludable.

[16]In addition to rejecting Jackson's statutory speedy-trial claim, we conclude his constitutional speedy-trial claim lacks merit as well.  Jackson's Sixth Amendment right to a speedy trial was not violated because the eighty-eight-day time period from Jackson's initial appearance until trial was well below the presumptively prejudicial threshold of one year.  See United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006); United States v. Twitty, 107 F.3d 1482, 1490 (11th Cir. 1997).

the § 851 notice in place.  We affirm Jackson's convictions.

**AFFIRMED in PART, VACATED and REMANDED in PART.**