[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 1, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15741
Non-Argument Calendar

_____

D. C. Docket No. 07-20374-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ENRIQUE ALVAREZ,

Defendant-Appellant.

_____

No. 07-15835
Non-Argument Calendar

_____

D. C. Docket No. 07-20374-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AMELIA GIL,

Defendant-Appellant.

_____

No. 07-15836
Non-Argument Calendar
_____

D. C. Docket No. 07-20374-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIRIAM GIL,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 1, 2009)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Enrique Alvarez, Miriam Gil, and Amelia Gil were convicted of violating 21

U.S.C. §§ 841(a)(1) and 846, which prohibit conspiring to possess with intent to

distribute 1,000 or more marijuana plants. This is their consolidated appeal.

Alvarez, who proceeded to a bench trial, appeals his conviction. Miriam and

Amelia, who pled guilty, appeal their sentences. For the reasons that follow, we

affirm Alvarez's conviction and Miriam's and Amelia's sentences. We address each defendant's appeal in turn.

## I. ENRIQUE ALVAREZ

Alvarez appeals the district court's denial of his motion for judgment of acquittal. He argues that the evidence insufficiently supported a finding that the government proved the indicted drug quantity. Instead, he argues, he should have been convicted of the lesser-included offense involving more than 100 but fewer than 1000 marijuana plants.

The applicable standard of review is sufficiency of the evidence. *United States v. Jackson,* 544 F.3d 1176, 1186 n.14 (11th Cir. 2008) (per curiam), *cert. denied*, 129 S. Ct. 1925 (2009). Under that standard, we review *de novo* the denial of the motion for judgment of acquittal, "draw all reasonable inferences in favor of the government[,] and determine whether a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *Id.* (citation and quotation marks omitted). "We will not reverse a conviction for insufficient evidence in a non-jury trial unless, upon reviewing the evidence in the light most favorable to the government, no reasonable trier of fact could find guilt beyond a reasonable doubt." *United States v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) (citation omitted). We review the district court's bench trial

3

findings of fact for clear error. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).

Here, the district court used two calculation methods to determine that Alvarez's offense involved at least 1,000 marijuana plants, each time erroneously counting marijuana clones as plants. Under the first method, however, the court calculated 1,002 plants before counting any of the clones. That first calculation reflects the court's apparent acceptance of the government's theory that Alvarez was involved in the conspiracy for at least six ninety-day growing cycles, each of which produced 167 plants. Since a reasonable factfinder could conclude that the evidence supporting the government's theory established Alvarez's guilt beyond a reasonable doubt, we affirm Alvarez's conviction.

## II. MIRIAM GIL

### *A. Brady[1] and Jencks Act[2] Violations*

Miriam argues that the district court made erroneous *Brady* or Jencks Act rulings in three instances. In the first instance, Miriam moved to preclude Wilfredo Cabrera del Sol and Roberto Valle from testifying and to strike Juan Carlos Castellanos's testimony because the government had not provided required

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

[2] 18 U.S.C. § 3500(b).

disclosures. The district court denied Miriam's motion. It concluded that the Supreme Court decisions requiring such disclosures were inapplicable because the government called these witnesses to rebut the defendant's safety-valve statement.

The district court's ruling appears to be erroneous, at least insofar as it ruled that *Brady* is inapplicable to sentencing hearings. *See Chandler v. Moore*, 240 F.3d 907, 915–16 (11th Cir. 2001) (considering the merits of defendant's claim of a *Brady* violation during his resentencing hearing). However, we need not address the propriety of the court's ruling because Miriam does not show, or even argue, that the material she sought met the criteria for a *Brady* disclosure. *See United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (per curiam) (setting forth criteria for a *Brady* claim).[3]

In the second instance, Miriam moved, under the Jencks Act, for production of the safety-valve statement that Valle had submitted in another case and for a portion of the PSI from that case. The district court denied the motion. It found

---

3

> [T]o state . . . a [*Brady*] claim, a defendant must show (1) that the government possessed evidence favorable to the defendant (including impeachment evidence) . . . ; (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence . . . ; (3) that the prosecution suppressed the favorable evidence . . . ; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Hansen*, 262 F.3d at 1234 (citation and quotation marks omitted).

that disclosure was not required because Miriam had already pled guilty, and Valle was called only to rebut assertions that Miriam made in her safety-valve statement.

This ruling also appears to be erroneous. The Jencks Act applies at sentencing hearings, and Valle was called by, and testified on direct examination for, the government. FED. R. CRIM. P. 32. Again, however, the propriety of the court's ruling is irrelevant because Miriam does not show, or even argue, that the documents she sought were "statements" under the meaning of the Jencks Act, or that they were related to the subject matter of Valle's testimony.

In the third instance, Miriam moved, under both *Brady* and the Jencks Act, for production of debriefing notes taken by law enforcement agents who interviewed Valle about his case. But these notes, as Miriam's attorney confirmed, had been turned over to the defense. Therefore, the record does not support Miriam's contention that the district court erroneously denied her motion for production of these notes.

Because Miriam has not shown that she was denied access to any material that she was entitled to receive, we find no reversible error in the district court's *Brady* and Jencks Act rulings. Although the record contains other references to required disclosures, the Jencks Act, and *Brady*, Miriam has abandoned any challenge to those by not addressing them plainly and prominently in her appellate

brief.  *See United States v. Jernigan*, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) (noting that a claim that is not "plainly and prominently" indicated is abandoned on appeal, even if properly preserved).

*B.  Safety Valve*

Miriam further argues that the district court clearly erred by determining that her safety-valve statement did not truthfully reveal her involvement in the offense. "When reviewing the denial of safety-valve relief, we review for clear error a district court's factual determinations.  We review de novo the court's legal interpretation of the statutes and sentencing guidelines."  *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004) (per curiam) (citations omitted).  The defendant has the burden of proving her eligibility for safety-valve relief.  *Id.* at 1302.

The Sentencing Guidelines provide for sentencing without regard to any statutory minimum ("safety valve") when specific requirements are met.  U.S. SENTENCING GUIDELINES MANUAL § 5C1.2(a) (2008).  To qualify for safety-valve relief, the defendant must "truthfully disclose to the Government all information and evidence that [s]he has about the offense and all relevant conduct."  *Johnson*, 375 F.3d at 1302 (citation and quotation marks omitted).  "[I]t is the offense for which the defendant is convicted that determines the scope of information which

the defendant must disclose." *Id.* (citation omitted). In a conspiracy case, the defendant is required to provide "all the information that [s]he possesses about [her] involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997) (citation omitted).

We reject Miriam's challenges to the district court's finding that her safety-valve statement failed to comply with §5C1.2(5)'s "tell-all" requirement. Although the government did not prove that Miriam possessed a gun in furtherance of her drug activities, details surrounding the recovery of her firearms were an important part of this case. The record supports the district court's finding that Miriam was misleading about this. She stated that she did not know where the gun was and that she did not help the agents find it. However, a Drug Enforcement Administration agent rebutted her statements by testifying that Miriam told him exactly where the gun was. Thus, the record supports the district court's finding that Miriam failed to comply with the "tell-all" requirement. We affirm the court's denial of safety-valve relief.

### III. AMELIA GIL

*A.* Brady *and Jencks Act Violations*

Amelia adopts by reference Miriam's argument that the district court

unfairly impeded her defense by making various procedural errors, including erroneous rulings under *Brady* and the Jencks Act. *See* FED. R. APP. P. 28(i) (allowing an appellant to adopt by reference a portion of another party's brief). Since Miriam fails to establish that the district court committed any *Brady* or Jencks Act errors that would require a remand, so does Amelia.

### B. *Safety Valve*

Amelia further argues that the district court clearly erred by denying her safety-valve relief based on Castellanos's testimony. We disagree. The district court credited some portions of Castellanos's testimony and discreded others. The court's credibility determinations were within its discretion as a factfinder. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

The district court's finding that Amelia's safety-valve statements were inadequate is supported by the record. The court considered three specific examples. First, the court determined that Amelia was involved in the operation by 2002 or 2003 and that her statement was incorrect to the extent she asserted that, before 2005, she was only generally aware of Feliciano Castillo's and Miriam's activities. The court's factual finding regarding the date of Amelia's involvement was not clearly erroneous given Castellanos's testimony that, on several occasions in 2002 or 2003, Amelia cut marijuana plants and was present during conversations

9

about the business.

Second, the court determined that Amelia's statement was incorrect regarding a conversation she had with Castellanos and Castillo about marijuana activities. Castellanos testified that the conversation occurred in 2003, but Amelia denied participating in it. Again, given Castellanos's testimony, the court's finding that Amelia was not truthful on this point was not clearly erroneous.

Third, the court determined that Amelia's statement was inadequate because her direct testimony failed to state that Castellanos set up lights for Castillo. Amelia's testimony regarding Castellanos's activities with Castillo was internally inconsistent: on cross-examination, she testified that Castellano did "nothing" with Castillo; on rebuttal, she testified that Castellano set up the electrical board, and that Castillo shared this plan with her beforehand; and on cross-examination for her rebuttal, she testified that she did not know that Castellanos set up the board until after the fact.

To be sure, the district court was mistaken when it stated that Amelia was asked on direct what did Castellanos do when he came over. The court correctly noted, however, that Amelia did not discuss Castellanos's involvement on direct examination at all. Given the internal inconsistencies in her testimony regarding Castellanos's involvement, and considering the court's warning that her testimony

10

at sentencing should constitute the entirety of her safety-valve statement, the record supports the court's finding that her statement was inadequate on this point.

Finally, although Amelia asserts that the court erroneously found that she recruited Castellanos, her assertion is not supported by the record, as the court found that Miriam brought Castellanos to the houses. Thus, the record supports the district court's determination that Amelia's safety-valve statement did not meet the requirements of the "tell-all" provision. We affirm the court's denial of safety-valve relief.

## IV. CONCLUSION

After carefully reviewing the record and the parties' briefs, we find no reversible error. We affirm Alvarez's conviction and Miriam's and Amelia's sentences.

**AFFIRMED.**