# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 10-3007

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Roy Willliam Rothermich, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

———————

Submitted: June 13, 2011
Filed: August 15, 2011

———————

Before MURPHY, ARNOLD, and SMITH, Circuit Judges.

———————

PER CURIAM.

A jury found Roy Rothermich guilty of one count of conspiracy to possess pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(1) and 846, and one count of possession of pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1). Rothermich appeals, arguing that the district court[1] erroneously admitted (1) evidence of Rothermich's prior arrest for methamphetamine possession and (2) his girlfriend's out-of-court statement as an excited utterance. We affirm.

———————

[1] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

## I. *Background*

The Franklin County Narcotics Enforcement Unit (FCNEU) received an anonymous tip that Rothermich and his brother, George Rothermich ("George"), were involved in the manufacture of methamphetamine at George's residence located at 4167 Highway 50 in Beaufort, Missouri ("Beaufort residence"). According to the tip, Roy Rothermich "was in and out of that address and was laying low due to a recent bust in Bland, Missouri."

Subsequently, Detective Scott Briggs, along with other FCNEU detectives, conducted a "knock and talk" at the Beaufort residence to determine whether persons at the residence were manufacturing methamphetamine. At the residence, detectives observed, next to a detached garage, a "burn barrel," as well as two one-gallon fuel cans and peeled, burned lithium batteries in or around the burn barrel. According to Detective Briggs, based on his past experience, such items are commonly used in manufacturing methamphetamine.

After observing these items, Detective Briggs applied for and received a search warrant. During the execution of the search warrant, law enforcement located, in the detached garage, "a clandestine methamphetamine lab, numerous chemicals associated with the manufacturing of methamphetamine to include Coleman fuel, peeled lithium batteries, other unknown chemicals and solvent substances." Additionally, law enforcement discovered "empty containers, used containers, [and] empty blister packs for pseudoephedrine," which are "items that will assist someone in making methamphetamine." A search of the home revealed drug paraphernalia, including aluminum foil and glass pipes.

As part of its investigation, the FCNEU obtained the pseudoephedrine logs for Rothermich, George, and codefendant Anthony Seamon from Wal-Mart, Target, and Walgreens. The logs showed a pseudoephedrine purchase pattern consistent with an illicit purpose.

Special Agent Arnie Baratti of the Drug Enforcement Administration and several other members of law enforcement participated in the arrest of Rothermich at the residence of Rothermich and his girlfriend, Nicole Dailey. Dailey and her four-year-old son were present during the arrest. Upon arresting Rothermich, officers discovered numerous items associated with the manufacture of methamphetamine inside the residence and on the property. Agent Baratti found "a couple of glass pipes with white residue in them" above the toilet in the master bedroom bathroom and "a gallon size container with Coleman fuel which was by the toilet and a . . . propane-type torch." A battery and other "drug paraphernalia" items were located on top of the Coleman fuel container. Outside the residence, law enforcement discovered a trash barrel and several insulated containers. Agent Baratti observed items consistent with the illegal manufacture of methamphetamine inside the trash barrel and insulated containers.

Rothermich was charged with one count of conspiracy to possess pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(1) and 846, and one count of possession of pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1).

Prior to trial, the government gave notice of its intent to adduce evidence or testimony pursuant to Federal Rule of Evidence 404(b). The government filed a motion in limine to admit evidence pursuant to Rule 404(b) concerning Rothermich's prior possession of methamphetamine on, *inter alia*, April 24, 2008, in Franklin County, Missouri. The court reserved its ruling on the admission of the evidence until after hearing the government's initial evidence.

At trial, Agent Baratti testified regarding Rothermich's arrest. According to Agent Baratti, after law enforcement conducted a search of the property and seized items from the residence, Dailey, Rothermich's girlfriend, was informed of the items seized. Agent Baratti testified that Dailey "was very visibly upset and . . . emotional

about it." Agent Baratti was then asked whether Dailey made any statements, and Rothermich objected on the grounds that the question called for hearsay. In response, the government asserted that Dailey's statement was admissible as an excited utterance under Federal Rule of Evidence 803(2).

At sidebar, the court asked the government what Agent Baratti was going to say that Dailey said. The government responded that Agent Baratti was

> going to say that she became extremely emotional, crying. She indicates she had no idea that those items were in the residence. She believed Mr. Rothermich had stopped cooking methamphetamine after his most recent arrest; that she was extremely excited, and she was concerned she was going to lose her child as a result of his activity, and she denied having knowledge of any of those items in her residence.

Rothermich maintained that the statement was not an excited utterance but instead a statement by "someone trying to cover up for their [sic] own culpability in a criminal enterprise which is a specific lie to law enforcement when she hasn't even been *Mirandized*."

Ultimately, the court admitted the statement as an excited utterance, over Rothermich's objection. Agent Baratti then testified that Dailey "was extremely upset" and "crying off and on" when he informed her about the items seized from the residence. According to Agent Baratti, Dailey "said something to the effect of, 'I thought that he stopped doing this after he got caught the last time.'" Agent Baratti also stated that Dailey

> began screaming at Mr. Rothermich who was seated in a police car in front of the residence, and she ran from the back of the abandoned house to the car. She was yelling obscenities at him, and she asked us to get him out of the car so she could strike him.

Thereafter, the government informed the court of its desire to call as a witness Special Agent Eric R. Kriete of the United States Secret Service, who was formerly a state trooper with the Missouri State Highway Patrol. Agent Kriete was to testify about Rothermich's April 2008 arrest for possession of methamphetamine. Rothermich requested a Rule 404(b) limiting instruction and also renewed his objection to the evidence. The court overruled Rothermich's objection and gave the following limiting instruction to the jury:

> You are about to hear evidence that the Defendant possessed methamphetamine and drug paraphernalia in the past. You may consider this evidence only if you unanimously find it is more likely true than not true.
>
> This is a lower standard than proof beyond a reasonable doubt. If you find that this evidence is more likely true than not true, you may consider it to help you decide whether the Defendant knowingly and intentionally participated in the conspiracy charged in Count I and was not merely an unwitting—an uninvolved participant and whether the Defendant possessed pseudoephedrine with the intent to manufacture methamphetamine.
>
> You should give it the weight and value you believe it is entitled to receive. If you find that it is not more likely true than true, then you shall disregard it. Remember, even if you find that the Defendant may have committed similar acts in the past, this is not evidence that he committed such an act in this case. You may not convict a person simply because you believe he may have committed similar acts in the past. The Defendant is on trial only for the crimes charged, and you may consider the evidence of prior acts only on the issue of knowledge or intent.

Agent Kriete then testified that while working as a trooper for the Missouri State Highway Patrol, he stopped Rothermich's vehicle for a traffic violation. During the stop, Agent Kriete observed a weapon in Rothermich's vehicle and, upon arresting Rothermich for illegal plates, conducted a search of Rothermich's vehicle. During the

-5-

search, he found a wooden box containing several baggies and pills; that evidence was submitted to the Missouri State Highway Patrol and found to contain methamphetamine. Agent Kriete also testified that he found a pseudoephedrine-allergy box, which he could not remember was empty or full, and that, during this stop, Rothermich admitted that he had previously used methamphetamine.

At the conclusion of the government's evidence, the district court instructed the jury that "some evidence was received for a limited purpose only" and that the jury "must follow" its prior instruction regarding that evidence.

The jury found Rothermich guilty on both counts in the indictment.

## II. *Discussion*

On appeal, Rothermich argues that the district court committed two reversible errors. First, he asserts that the district court erred by allowing evidence of a prior arrest for methamphetamine possession under Rule 404(b). Second, he contends that the district court erred by permitting the government to elicit hearsay statements of Dailey through the excited utterance exception to the hearsay rule under Federal Rule of Evidence 803(2), in violation of his Sixth Amendment right of confrontation.

### A. *Prior Arrest*

"[Rothermich] first contends that the district court erred in admitting the testimony of Agent [Kriete] pursuant to Rule 404(b)." *United States v. Hill*, 638 F.3d 589, 592 (8th Cir. 2011). This court reviews for an abuse of discretion a district court's admission of evidence under Rule 404(b). *Id*.

> Rule 404(b) prohibits the admission of other bad acts that are offered to "prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence is admissible "for certain limited purposes [when] it (1) is relevant to a material issue, (2) is similar in kind and close in time to the crime charged, (3) is proven by

a preponderance of the evidence, and (4) does not have a prejudicial effect that substantially outweighs the probative value." *United States v. Ali*, 616 F.3d 745, 752–53 (8th Cir. 2010) (citing *United States v. Turner*, 583 F.3d 1062, 1065–66 (8th Cir. 2009), *cert. denied*, ___U.S. ___, 130 S.Ct. 1928, 176 L.Ed.2d 396 (2010)) (alteration added).

*Id*.

"Evidence of prior drug possession, regardless of the amount, is admissible to show knowledge and intent when intent is an element of the offense charged." *United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000). Here, Rothermich's intent was an element that the government had to prove. *See* 21 U.S.C. §§ 841(c)(1) and 846. We have previously held that a district court did not abuse its discretion in admitting evidence of the defendant's prior methamphetamine use under Rule 404(b) where the defendant was charged with, *inter alia*, "possessing pseudoephedrine with intent to manufacture methamphetamine." *United States v. Taylor*, No. 05-3384, 2006 WL 1069545, at *1 (8th Cir. Apr. 24, 2006) (unpublished per curiam). Just as in *Taylor*, Rothermich's "offense required the Government to prove knowledge and intent." *Id*. at *2. Furthermore, Rothermich concedes that "prior possession of methamphetamine is *logically relevant* [to whether a conspiracy existed or whether he possessed pseudoephedrine with the intent to manufacture methamphetamine] in that it tends to connect [him] with the final substance mentioned in the indictment." (Emphasis added.)

"When prior bad acts are admitted to show intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." *United States v. Ironi*, 525 F.3d 683, 687 (8th Cir. 2008) (quotation and citation omitted). Here, as we concluded in *Taylor*, possessing pseudoephedrine with intent

to manufacture and possession of methamphetamine are "similar in kind." *Taylor*, 2006 WL 1069545, at *2.[2]

Agent Kriete's uncontroverted testimony established by a preponderance of the evidence Rothermich's prior arrest for possession of methamphetamine. The district court's admission of this evidence was not unfairly prejudicial, as the district court gave a limiting instruction to the jury. *United States v. Halk*, 634 F.3d 482, 488 (8th Cir. 2011) (explaining this court's reluctance "to find that the evidence was unfairly prejudicial when the district court gave an appropriate limiting instruction" (quotation and citation omitted)).

Accordingly, we hold that the district court did not abuse its discretion in admitting evidence of Rothermich's prior arrest for possession of methamphetamine.

B. Excited Utterance

Rothermich next argues that the district court erred in allowing the government to elicit out-of-court statements of Dailey through Rule 803(2)—the excited utterance exception to the hearsay rule—in violation of his Sixth Amendment right of confrontation. Rothermich asserts that Dailey did not make the statements when under the excitement of a startling event. Instead, he maintains that the statements were merely self-serving testimonial statements in response to law enforcement questioning.

---

[2]Rothermich has not challenged the 2008 arrest as overly remote in time, and, based on our review of the record, we do not find the arrest to be too remote in time. *See United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005) (explaining that to determine whether evidence is "too remote," we apply a "reasonableness standard and examine[] the facts and circumstances of each case" (quotations and citations omitted)).

We need not resolve whether the district court erroneously admitted Dailey's statements through Agent Baratti's testimony under the excited utterance exception. Even if we assume that the statements were hearsay not subject to Rule 803(2) and erroneously admitted in violation of the Confrontation Clause, "[a] nonwaived *Crawford*[3] violation is subject to a harmless error analysis, under which we assess whether the Constitutional violation was harmless beyond a reasonable doubt. Evidence erroneously admitted in violation of the Confrontation Clause is harmless beyond a reasonable doubt as long as the remaining evidence is overwhelming." *United States v. Holmes*, 620 F.3d 836, 844 (8th Cir. 2010) (internal citation omitted).

Here, the remaining evidence that the government produced is overwhelming. The government presented evidence of the items seized during execution of search warrants at George's residence and Rothermich's residence. These items included methamphetamine, pseudoephedrine, and other items commonly associated with the manufacture of methamphetamine. Seamon, Rothermich's codefendant, testified that he had seen both Rothermich and George manufacture methamphetamine and that he had assisted Rothermich with obtaining the items necessary to manufacture methamphetamine. The government also produced the pseudoephedrine purchase logs from Rothermich and his codefendants.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[3] *Crawford v. Washington*, 541 U.S. 36, 52–54 (2004) (holding that out-of-court statements made by an unavailable witness are admissible only if the defendant had a prior opportunity to cross-examine that witness).